TRAVELERS HEALTH ASSOCIATION ET AL. *v.* VIRGINIA EX REL. STATE CORPORATION COMMISSION.

No. 76.  Argued November 15, 1949.—Reargued April 17, 1950.— Decided June 5, 1950.

*Moses G. Hubbard, Jr.* argued the cause for appellants. With him on the brief was *Thomas B. Gay.*

*Walter E. Rogers,* Assistant Attorney General of Virginia, argued the cause for appellee. With him on the brief was *J. Lindsay Almond, Jr.,* Attorney General.

A brief supporting appellee was filed as *amici curiae* by *Nathaniel L. Goldstein,* Attorney General, *Wendell P. Brown,* Solicitor General, and *John C. Crary, Jr.,* Assistant Attorney General, for the State of New York; *William L. Phinney,* Attorney General, for the State of New Hampshire; and *Hall Hammond,* Attorney General, for the State of Maryland.

Mr. Justice Black delivered the opinion of the Court.

In an effort to protect its citizens from "unfairness, imposition or fraud" in sales of certificates of insurance and other forms of securities, the Virginia "Blue Sky Law" requires those selling or offering such securities to obtain a permit from the State Corporation Commission.[1] Applicants for permits must meet comprehensive conditions: they must, for example, provide detailed infor-

---

[1] Acts of the General Assembly of Virginia, 1928, c. 529, p. 1373, as amended, Acts of 1932, c. 236, p. 434; Michie's 1942 Code of Virginia, § 3848 (47) *et seq.*

mation concerning their solvency, and must agree that suits can be filed against them in Virginia by service of process on the Secretary of the Commonwealth.[2]

While violation of the Act is a misdemeanor punishable by criminal sanctions, § 6 provides another method for enforcement. After notice and a hearing "on the merits," the State Corporation Commission is authorized to issue a cease and desist order restraining violations of the Act. The section also provides for service by registered mail where other types of service are unavailable "because the offering is by advertisement and/or solicitation through periodicals, mail, telephone, telegraph, radio, or other means of communication from beyond the limits of the State . . . ." The highest court of Virginia rejected contentions that this section violates constitutional requirements of due process, and the case is properly here on appeal under 28 U. S. C. § 1257 (2).

In this case cease and desist proceedings under § 6 were instituted by the State Corporation Commission against Travelers Health Association and against R. E. Pratt, as treasurer of the Association and in his personal capacity. Having received notice by registered mail only, they appeared "specially" for "the sole purpose of objecting to the alleged jurisdiction of the Commonwealth of Virginia and of its State Corporation Commission, and of moving to set aside and quash service of summons . . . ." The agreed stipulation of facts and certain exhibits offered by the state can be summarized as follows:

The appellant Travelers Health Association was incorporated in Nebraska as a nonprofit membership association in 1904. Since that time its only office has been located in Omaha, from which it has conducted a mail-order health insurance business. New members pay an initiation fee and obligate themselves to pay periodic

---

[2] Michie § 3848 (51), (55).

assessments at the Omaha office. The funds so collected are used for operating expenses and sick benefits to members. The Association has no paid agents; its new members are usually obtained through the unpaid activities of those already members, who are encouraged to recommend the Association to friends and submit their names to the home office. The appellant Pratt in Omaha mails solicitations to these prospects. He encloses blank applications which, if signed and returned to the home office with the required fee, usually result in election of applicants as members. Certificates are then mailed, subject to return within 10 days "if not satisfactory." Travelers has solicited Virginia members in this manner since 1904, and has caused many sick benefit claims to be investigated. When these proceedings were instituted, it had approximately 800 Virginia members.

The Commission, holding that the foregoing facts supported the state's power to act in § 6 proceedings, overruled appellants' objection to jurisdiction and their motion to quash service. The Association and its treasurer were ordered to cease and desist from further solicitations or sales of certificates to Virginia residents "through medium of any advertisement from within or from without the State, and/or through the mails or otherwise, by intra- or inter-state communication, . . . unless and until" it obtained authority in accordance with the "Blue Sky Law." This order was affirmed by the Virginia Court of Appeals. 188 Va. 877, 882, 51 S. E. 2d 263, 271.

Appellants do not question the validity of the Virginia law "to the extent that it provides that individual and corporate residents of other states shall not come into the State for the purpose of doing business there without first submitting to the regulatory authority of the State." As to such state power see, e. g., Hall v. Geiger-Jones Co., 242 U. S. 539. Their basic contention is that all their activities take place in Nebraska, and that consequently

Virginia has no power to reach them in cease and desist proceedings to enforce any part of its regulatory law. We cannot agree with this general due process objection, for we think the state has power to issue a "cease and desist order" enforcing at least that regulatory provision requiring the Association to accept service of process by Virginia claimants on the Secretary of the Commonwealth.

Appellants' chief reliance for the due process contention is on *Minnesota Assn.* v. *Benn,* 261 U. S. 140. There a Minnesota association obtained members in Montana by the same mail solicitation process used by Travelers to get Virginia members. The certificates issued to Montana members also reserved the right to investigate claims, although the Court pointed out that Benn's claim had not been investigated. This Court held that since the contracts were "executed and to be performed" in Minnesota, the Association was not "doing business" in Montana and therefore could not be sued in Montana courts unless "consent" to Montana suits could be implied. The Court found the circumstances under which the insurance transactions took place insufficient to support such an implication.

But where business activities reach out beyond one state and create continuing relationships and obligations with citizens of another state, courts need not resort to a fictional "consent" in order to sustain the jurisdiction of regulatory agencies in the latter state. And in considering what constitutes "doing business" sufficiently to justify regulation in the state where the effects of the "business" are felt, the narrow grounds relied on by the Court in the *Benn* case cannot be deemed controlling.

In *Osborn* v. *Ozlin,* 310 U. S. 53, 62, we recognized that a state has a legitimate interest in all insurance policies protecting its residents against risks, an interest which the state can protect even though the "state action may have repercussions beyond state lines . . . ." And in *Hoope-*

*ston Canning Co.* v. *Cullen,* 318 U. S. 313, 316, we rejected the contention, based on the *Benn* case among others, that a state's power to regulate must be determined by a "conceptualistic discussion of theories of the place of contracting or of performance." Instead we accorded "great weight" to the "consequences" of the contractual obligations in the state where the insured resided and the "degree of interest" that state had in seeing that those obligations were faithfully carried out. And in *International Shoe Co.* v. *Washington,* 326 U. S. 310, 316, this Court, after reviewing past cases, concluded: "due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

Measured by the principles of the *Osborn, Hoopeston* and *International Shoe* cases, the contacts and ties of appellants with Virginia residents, together with that state's interest in faithful observance of the certificate obligations, justify subjecting appellants to cease and desist proceedings under § 6. The Association did not engage in mere isolated or short-lived transactions. Its insurance certificates, systematically and widely delivered in Virginia following solicitation based on recommendations of Virginians, create continuing obligations between the Association and each of the many certificate holders in the state. Appellants have caused claims for losses to be investigated and the Virginia courts were available to them in seeking to enforce obligations created by the group of certificates. See *International Shoe Co.* v. *Washington, supra,* at 320.

Moreover, if Virginia is without power to require this Association to accept service of process on the Secretary of the Commonwealth, the only forum for injured certificate holders might be Nebraska. Health benefit

claims are seldom so large that Virginia policyholders could afford the expense and trouble of a Nebraska law suit. In addition, suits on alleged losses can be more conveniently tried in Virginia where witnesses would most likely live and where claims for losses would presumably be investigated. Such factors have been given great weight in applying the doctrine of *forum non conveniens.* See *Gulf Oil Co.* v. *Gilbert,* 330 U. S. 501, 508. And prior decisions of this Court have referred to the unwisdom, unfairness and injustice of permitting policyholders to seek redress only in some distant state where the insurer is incorporated.[3] The Due Process Clause does not forbid a state to protect its citizens from such injustice.

There is, of course, one method by which claimants could recover from appellants in Virginia courts without the aid of substituted service of process: certificate holders in Virginia could all be garnished to the extent of their obligations to the Association. See *Huron Corp.* v. *Lincoln Co.,* 312 U. S. 183, 193. While such an indirect procedure would undeniably be more troublesome to claimants than the plan adopted by the state in its "Blue Sky Law," it would clearly be even more harassing to the Association and its Virginia members. Metaphysical concepts of "implied consent" and "presence" in a state should not be solidified into a constitutional barrier against Virginia's simple, direct and fair plan for service of process on the Secretary of the Commonwealth.

We hold that Virginia's subjection of this Association to the jurisdiction of that State's Corporation Commission in a § 6 proceeding is consistent with "fair play and substantial justice," and is not offensive to the Due Process Clause.

---

[3] *Lumbermen's Ins. Co.* v. *Meyer,* 197 U. S. 407, 418, 419; *Mutual Life Ins. Co.* v. *Spratley,* 172 U. S. 602, 619; *cf. International Shoe Co.* v. *Washington,* 326 U. S. 310, 319.

Appellants also contend that § 6 as here applied violates due process because the Commission order attempts to "destroy or impair" their right to make contracts in Nebraska with Virginia residents. Insofar as this contention can be raised in a special appearance merely to contest jurisdiction, it is essentially the same as the due process issue discussed above. For reasons just given, Virginia has power to subject Travelers to the jurisdiction of its Corporation Commission, and its cease and desist provisions designed to accomplish this purpose "can not be attacked merely because they affect business activities which are carried on outside the state." *Hoopeston Canning Co.* v. *Cullen, supra,* 320–321. See also *Osborn* v. *Ozlin,* 310 U. S. 53, 62. These two opinions make clear that *Allgeyer* v. *Louisiana,* 165 U. S. 578, requires no different result.

Appellants concede that in the *Osborn* and *Hoopeston* cases we sustained state laws providing protective standards for policyholders in those states, even though compliance with those standards by the insurance companies could have repercussions on similar out-of-state contracts. It is argued, however, that those cases are distinguishable because they both involved companies which were "licensed to do business in the state of the forum and were actually doing business within the state . . . ." But while Hoopeston Canning Co. had done business in New York under an old law, it brought the case here to challenge certain provisions of a new licensing law with which it had to comply if it was to do business there in the future. Thus it was seeking the same kind of relief that appellants seek here, and for the same general purpose. What we there said as to New York's power is equally applicable to Virginia's power here.

It is also suggested that service of process on appellants by registered mail does not meet due process require-

ments. What we have said answers this contention insofar as it alleges a lack of state jurisdiction because appellants were served outside Virginia. If service by mail is challenged as not providing adequate and reasonable notice, the contention has been answered by *International Shoe Co.* v. *Washington, supra,* 320–321. See also *Mullane* v. *Central Hanover Bank,* 339 U. S. 306.

The due process questions we have already discussed are the only alleged errors relied on in appellants' brief,[4] and appellants' special appearance only challenged state jurisdiction and the service of process. We therefore have no occasion to discuss the scope of the Commission's order, or the methods by which the state might attempt to enforce it.[5]

*Affirmed.*

MR. JUSTICE DOUGLAS, concurring.

Since the formula adopted by the Court is adequate to dispose of this case, I have joined in the opinion. But I feel that the type of problem presented requires a more selective treatment. Hence my separate opinion.

[4] One federal question suggested in the appellants' statement of jurisdiction was that § 6 as interpreted by the state court infringed federal control of the mails delegated to Congress by Art. I, § 8, cl. 7 of the United States Constitution. But appellants' brief on submission of the case does not include this question in the "specifications of errors relied upon" and does not even mention that constitutional clause.

[5] For examples of problems which might be raised by attempts to impose punishment for violation of the order, see *Strassheim* v. *Daily,* 221 U. S. 280, 284–285; cf. *Hyatt* v. *Corkran,* 188 U. S. 691, 712, 719. Section 6 itself provides no method for enforcement, except insofar as such stature might be attributed to its provision for giving a cease and desist order "publicity . . . to the public through the press or otherwise as the commission may, in its discretion, determine to be advisable for the reasonable information and protection of the public."

Virginia's Blue Sky Law [1] is a comprehensive scheme for the protection of the state's investors. Securities can be offered for sale in the state only after the issuer obtains a permit.[2] To get it, the applicant must supply detailed information about its solvency, its earning record, and the nature of the securities.[3] Promoters may be required to supply a bond.[4] Applicants must appoint an agent, the Secretary of the Commonwealth, to receive service of process.[5] Only after proof of their good character and financial responsibility are security salesmen licensed.[6] After issuance, the state Corporation Commission is authorized again to investigate the issuer with an eye to possible revocation of its permit.[7] These are the high points of the comprehensive regulation which Virginia seeks to apply to appellants.

That the business of insurance is interstate commerce is established by *United States* v. *South-Eastern Underwriters Assn.*, 322 U. S. 533. Any doubts about the power of a state to exclude an interstate insurance company which refuses to comply with its regulatory laws were dispelled by the passage of the McCarran Act. 59 Stat. 33, 15 U. S. C. §§ 1011–1015. See *Robertson* v. *California,* 328 U. S. 440, 461, 462.

The requirements of due process do not, in my opinion, preclude the extension of Virginia's regulatory scheme to appellant. I put to one side the case where a policy-holder seeks to sue the out-of-state company in Virginia.

---

[1] Acts of the General Assembly of Virginia, 1928, c..529, p. 1373, as amended, Acts of 1932, c. 236, p. 434; Michie's 1942 Code of Virginia, § 3848 (47) *et seq.*

[2] Michie § 3848 (47).

[3] Michie § 3848 (51).

[4] Michie § 3848 (51) (r).

[5] Michie § 3848 (55).

[6] Michie § 3848 (50) (m).

[7] Michie § 3848 (53).

His ability to sue is not necessarily the measure of Virginia's power to regulate, as the Court said in *Old Wayne Life Assn.* v. *McDonough,* 204 U. S. 8, 21. It is the nature of the state's action that determines the kind or degree of activity in the state necessary for satisfying the requirements of due process. What is necessary to sustain a tax or to maintain a suit by a creditor (see *Old Wayne Life Assn.* v. *McDonough, supra; Provident Savings Assn.* v. *Kentucky,* 239 U. S. 103, 114–116; Isaacs, An Analysis of Doing Business, 25 Col. L. Rev. 1018, 1024) is not in my view determinative when the state seeks to regulate solicitation within its borders.

Blue Sky Laws are a well-recognized exercise of the police power of the states. See *Hall* v. *Geiger-Jones Co.,* 242 U. S. 539, 552. The wiles of the salesman have been many; the devices to avoid state regulation have been clever and calculated. One of those who contested the constitutionality of the Michigan Blue Sky Law in *Merrick* v. *Halsey & Co.,* 242 U. S. 568, 573, had no place of business in the state and was not sending agents into it. The history of the various methods used to evade state regulation is too recent to require extended comment. Instrumentalities of interstate and foreign commerce were extensively employed by those beyond the reach of a state to sell securities to its citizens. See H. R. Rep. No. 85, 73d Cong., 1st Sess. 10. The Securities Act of 1933 (48 Stat. 74, 15 U. S. C. § 77a *et seq.*) was passed to fill the gap.[8]

A state is helpless when the out-of-state company operates beyond the borders, establishes no office in the state, and has no agents, salesmen, or solicitors to obtain

---

[8] By § 3 (a) (8) insurance policies issued by a corporation subject to the supervision of specified state agencies are exempt from this federal regulation. Section 18 provides that the Act does not affect the jurisdiction of any state agency over a security or a person.

business for it within the state. Then it is beyond the reach of process. In the present case, however, that is only the formal arrangement. The actual arrangement shows a method of soliciting business within Virginia as active, continuous, and methodical as it would be if regular agents or solicitors were employed. Cf. *Hoopeston Co.* v. *Cullen,* 318 U. S. 313.

Practically all of appellants' business in Virginia originates with and is the result of the activities of its Virginia members. The recommendation of a member relieves an applicant of the duty of furnishing any reference. Though the old members are not designated as "agents," it "clearly appears," as stated by the Supreme Court of Appeals, "that the association relies almost exclusively on these activities of its Virginia members to bring about an expansion of its Virginia business." *Travelers Health Assn.* v. *Virginia,* 188 Va. 877, 887; 51 S. E. 2d 263, 267. This device for soliciting business in Virginia may be unconventional and unorthodox; but it operates functionally precisely as though appellants had formally designated the Virginia members as their agents. Through these people appellants have realistically entered the state, looking for and obtaining business. Whether such solicitation is isolated or continuous, it is activity which Virginia can regulate. See *Hooper* v. *California,* 155 U. S. 648, 658. The requirements of due process may demand more or less [9] minimal contacts than are present here, depending on what the pinch of the decision is or what it requires of the foreign corporation. See *International Shoe Co.* v. *Washington,* 326 U. S. 310, 316–319. Where

---

[9] As Mr. Justice Rutledge said in *Frene* v. *Louisville Cement Co.,* 77 U. S. App. D. C. 129, 134, 134 F. 2d 511, 516, ". . . some casual or even single acts done within the borders of the sovereignty may confer power to acquire jurisdiction of the person, provided there is also reasonable provision for giving notice of the suit in accordance with minimal due process requirements."

the corporate project entails the use of one or more people in the state for the solicitation of business, in my view it does no violence to the traditional concept of due process to allow the state to provide protective measures governing that solicitation. That is all that is done here.

I cannot agree that this appeal is premature. Virginia has placed an injunction on appellants, an injunction which may have numerous consequences, *e. g.*, contempt proceedings. There is an existing controversy—real and vital to appellants.

MR. JUSTICE MINTON, with whom MR. JUSTICE JACKSON joins, dissenting.

The State Corporation Commission of Virginia instituted the proceedings leading to the cease and desist order entered in the instant case under § 6 of the Virginia Securities Law. Michie's Va. Code, 1942, § 3848 (52). That section provides for service by registered mail upon persons or corporations offering securities through the mails or by other means of communication. After hearing, the Commission is authorized to issue the order and to give it such publicity as the Commission considers desirable.

In this case no action has been taken under § 15 of the Law which provides that violation of the statute is a misdemeanor and punishable by fine, or under § 17 which provides for the imposition of a fine upon failure to comply with a lawful order of the Commission. Michie's Va. Code, 1942, § 3848 (61) (63). The Commission has in no way attempted to enforce the order issued by the Commission against appellants. Therefore appellants have not been hurt, and the question of due process is not reached. In the scheme of the statute, publicity appears to be the sole sanction of § 6. I know of no reason why Virginia may not go through this

shadow-boxing performance in order to publicize the activities of appellants in Virginia and notify its citizens that appellants have not qualified under the Securities Law. That is all the Commission says that it is doing or has the power to do under § 6. The Commission's view of the nature of this proceeding—a view reiterated by Virginia in its brief on the appeal to this Court— was stated in its opinion:

> "Respondents rely on the fact that their contacts with citizens of Virginia are by mail, that they are not doing business in Virginia and that they do not enter Virginia either personally or by agents. In setting up this defense they lose sight of the nature of this action. They are not charged with doing business in Virginia but with offering and advertising for sale and promoting the sale of insurance contracts in Virginia by mail and the action is to foreclose them from these activities. Whether the action will suffice to actually stop them is beside the point. It will suffice to put them on notice of pertinent laws of Virginia, to give them an opportunity to be heard and the state an opportunity to determine the facts, and, if, after hearing, a cease and desist order is issued, the Commission will then be authorized to give such publicity to the order as it sees fit for the 'information and protection of the public.' "

> .        .        .        .        .

> "No word found in or inference derived from Section 6, aforesaid, may properly, in our judgment, be said to impose penalties upon the respondents. . . ."

> .        .        .        .        .

> "There is no element of compulsion except such as may flow from a dread of the publicity attending such an order. In such cases, the only weapon available to the Commonwealth is to publicly advise that the

securities of the respondent do not bear the stamp of the state's approval and are being presented to the public without regard to the regulatory laws enacted to protect them. Section 6, *supra,* imposes no penalties, exacts no direct toll from those against whom its orders proceed. . . ."

The question of substituted service on the Secretary of the Commonwealth is not here in any aspect. As far as appears, service in this manner is not authorized by the Virginia statutes except where the nonresident has opened and is conducting a place of business within the State. Michie's Va. Code, 1942, § 3848 (55)a. Up to this date Virginia has not claimed the power to require appellants, who do business in Virginia only by mail, to appoint the Secretary of the Commonwealth as their agent for service of process, nor have the courts of Virginia rendered judgment in a suit where service was made in that manner. I do not understand, therefore, what possible application the Court's reference to substituted service on the Secretary of the Commonwealth could have in this case. I would answer the question of due process when Virginia has attempted to apply its process to appellants in a proceeding that has consequences of a nature which entitle a person to the protection of the Due Process Clause. See *Parker* v. *Los Angeles County,* 338 U. S. 327. I would, therefore, dismiss the appeal.

As stated, it seems to me that the majority opinion is saying that Virginia has more power than it claims in the instant proceeding. While Virginia has not attempted to do more than publicize the activities of appellants in the State, I read the majority opinion to intimate that under the service by registered letter Virginia might go further. The cease and desist order issued cannot validly compel appellants to designate the Secretary of the Commonwealth as their agent for service of process, any more than

it can constitutionally be considered as automatically accomplishing that result. An *in personam* judgment cannot be based upon service by registered letter on a nonresident corporation or a natural person, neither of whom has ever been within the State of Virginia. *Pennoyer* v. *Neff,* 95 U. S. 714; *Old Wayne Life Assn.* v. *McDonough,* 204 U. S. 8, 22–23. If that may not be done directly, it may not be done indirectly. Certainly such service cannot be justified where its purpose is to make substituted service legal in the future. These nonresidents cannot be brought in through service by registered mail and compelled to designate the Secretary of the Commonwealth as their agent for service of process so that thereafter service may be effected upon such nonresidents by serving the Secretary. So to hold would allow the State to pull itself up by its own bootstraps.

Service by registered mail is said by the majority to be sufficient where the corporation has "minimum contacts" with the state of the forum. How many "contacts" a corporation or person must have before being subjected to suit we are not informed. Here all of appellants' contacts with the residents of Virginia were by mail. No agent of appellant corporation has entered the State, nor has the individual appellant. The contracts were made wholly in Nebraska. Under these circumstances, I would hold that appellants were never "present" in Virginia.

> "For the terms 'present' or 'presence' are used merely to symbolize those activities of the corporation's agent within the state which courts will deem to be sufficient to satisfy the demands of due process." *International Shoe Co.* v. *Washington,* 326 U. S. 310, 316–317.

As I understand the *International Shoe Co.* case, the minimum contacts which a corporation has in the State

must be "activities of the corporation's agent within the state." There were such contacts by agents within the State in that case. Service was made, in addition to notice by registered letter, by personal service within the State upon one of those agents. Service on an agent within the jurisdiction would seem to me indispensable to a judgment against a corporation. It would seem to be an *a fortiori* proposition that judgment could not be obtained against a natural person who was not available for personal service.

We are not dealing here with the *power* of Virginia to regulate the transaction of insurance business with its citizens, as was the case in *Osborn* v. *Ozlin,* 310 U. S. 53, and *Hoopeston Co.* v. *Cullen,* 318 U. S. 313. In the case at bar we are concerned only with how Virginia may *enforce* such power as it has. No question of the sufficiency of service was involved in either the *Osborn* or the *Hoopeston* case, both of which were brought against some officer of a state. The question in those cases was whether the State had power, and not whether, having the power, it had also acquired jurisdiction of a defendant against whom a judgment could be rendered enforcing that power.

I would not attempt to instruct Virginia as to how to protect its citizens from these intruders from Nebraska. But I do not believe we should even intimate that judgments *in personam* may be obtained, by the simple process of sending a registered letter, against a corporation whose agents have never been in the forum where suit is brought, or against a natural person who is not personally served within the State.

Mr. Justice Reed and Mr. Justice Frankfurter, agreeing with the Court in reaching the merits, on the merits join this dissent.