77 A.2d 67 (1950)
MAZZOTTI
v.
W. J. RAINEY, Inc., et al.
Court of Chancery of Delaware, New Castle.
November 30, 1950.
James R. Morford and Edward W. Cooch, Jr., of Morford, Bennethum, Marvel & Cooch, Wilmington, for plaintiff.
C. S. Layton of Richards, Layton & Finger, Wilmington, and Earl F. Reed of Thorp, Bostwick, Reed & Armstrong, Pittsburgh, Pa., for defendants.
SEITZ, Vice Chancellor.
Plaintiff is a stockholder of the defendant Pennsylvania Industry, Inc. (hereinafter called "Industries"), a Delaware corporation. He has filed a derivative action seeking to recover for Industries, assets which he alleges were improperly diverted from it by the unlawful action of the individual defendants and the corporate defendants W. J. Rainey, Inc., a Delaware corporation, and Hecla Coal & Coke Company (hereinafter *68 called Hecla), a Pennsylvania corporation.
On December 28, 1948 service of process was purportedly made on Hecla, the Pennsylvania corporation, by making personal service upon W. L. Affelder, Vice President and Director of Hecla, and upon Thomas Watson, Secretary and Director of Hecla.
On June 12, 1950 Hecla moved to dismiss the action as to it or in lieu thereof to quash the return of service on the following grounds: (1) Hecla is a Pennsylvania corporation and is not subject to service of process in Delaware; (2) Hecla had not been properly served with process.
Thereafter plaintiff submitted and Hecla answered interrogatories directed toward the ascertainment of the business activities of Hecla in order to help resolve the issues posed by Hecla's motion. There appears to be no dispute as to the facts material to the disposition of Hecla's motion.
The officers purportedly served with process were also directors and stockholders of Industries. Service was made upon them in Wilmington, Delaware, while they were attending a stockholders' meeting of Industries. At the time Watson was served, he was one of the three proxies for the stock held beneficially by Hecla, although registered in the names of nominees. He voted said stock. Affelder stated that his only reasons for coming to Wilmington were to attend special stockholders' and directors' meetings of Industries as a stockholder and director thereof. Watson stated that such were also his primary reasons for coming to Delaware.
Hecla, according to its charter, was organized for the following purposes:
"2nd. Said corporation is formed for the purpose of mining, preparing for market and selling coal and such other minerals as may be incidentally developed and their products and the manufacture and sale of coke and by-products with the right to sell, lease, release, or otherwise dispose of all or any part of the real estate of the corporation by vote of its directors without the consent of the stockholders thereof."
According to its charter "The business of the corporation is to be transacted in the City of Pittsburgh, Allegheny County, Pennsylvania."
The pertinent papers demonstrate that Hecla's assets at the time of the purported service consisted almost exclusively of investments in other corporations. The activities of Hecla pertaining to the leasing of coal fields or ownership of other mineral property must now be classified as incidental, although it was once substantial. I further appears that Hecla's principal security investments are in the securities of Delaware corporations. Its investments in other securities at the date of service were substantially less than its investments and holdings in Delaware corporations. Thus at that date, its investments in Delaware corporations had a market value of approximately $7,200,000, plus an investment with a book value of approximately $2,100.000. At the same date its investments in other corporations amounted to approximately $1,000,000 in market value, plus assets with a book value of approximately $400,000.
Plaintiff contends that Hecla is subject to service of process in Delaware under two separate theories.
(1) Hecla was doing business in Delaware (a) because of its substantial ownership of stock of Delaware corporations; (b) because Hecla, by dominating the Delaware corporations involved, was actually present in Delaware; (c) and by regular and systematic exercise of control of Industries, in conjunction with the other Hillman interests, by regular attendance at stockholders' meetings of Industries in Delaware.
(2) The cause of action set forth in the complaint arose in Delaware and service of process was made upon the corporate agents in Delaware in accordance with paragraph 4589 of the Revised Code of Delaware, 1935.
The parties have tacitly agreed that all the facts relevant to the disposition of defendant Hecla's motion are before the court.
*69 Was Hecla "doing business" in Delaware to such an extent that it was subject to service at the time service was made upon the two directors? Plaintiff states in his brief that he does not contend that the ownership of stock by a foreign corporation of a domestic corporation, in and of itself, is sufficient business activity to constitute "doing business" where such stock ownership is merely incidental to the main activity of the foreign corporation. But says plaintiff, where, as here, the foreign corporation's business activities are limited to those of being an investment holding company and where it owns stock in domestic corporations and regularly and systematically votes such stock through its agents and thereby dominates and controls such corporations, it is "doing business" in the state where such activities take place.
Plaintiff points out that if the only business activity of a foreign corporation is that of functioning as an investment holding company, then the only manner in which it may be "present" in any state is through the exercise of powers incident to the ownership of investments. Plaintiff relies on the italicised language in the following statement found in 17 Fletcher Cyc. Corps. (Perm.Ed.) Sec. 8490:
"The mere fact that a foreign corporation acquires or holds stock of a domestic corporation does not of itself constitute the doing of business in the state, even though such ownership gives the corporation the controlling interest in the stock of the domestic corporation. If, however, the purchase and ownership of stock in other corporations is one of the very objects for which the corporation was organized, it would be doing business in the state when it purchases and holds stock of a corporation domiciled in the state."
The author seems to recognize the existence of an exception based on the situation where the purchase and ownership of stock was one of the very objects for which the corporation was organized. Assuming without deciding that this exception would be recognized in Delaware, let us look to the objects for which Hecla was organized.
According to its charter, Hecla was organized "for the purpose of mining, preparing for market and selling coal and such other minerals as may be incidentally developed and their products and the manufacture and sale of coke and by-products * * *." Consequently, insofar as its purpose can be found in its charter, Hecla was certainly not primarily organized for the purpose of purchasing and owning stock in other corporations. Moreover, it did actively engage in the coal and coke business for many years.
The problem must be resolved by seeking the answer to a larger question. Were the activities of Hecla's agents within this state sufficiently substantial to satisfy the demands of due process? In approaching the answer to this question it is well to keep in mind the language of the Supreme Court in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 159, 90 L.Ed. 95:
"It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. * * * Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations."
For purpose of disposing of the present motion I shall assume that the so-called Hillman interest dominated Industries through its various stock holdings. Hecla's ownership of Industries' stock did not, in and of itself, give Hecla control of Industries because Hecla owned beneficially only 4,719 shares of preferred stock out of 64,599 outstanding and it owned only 40,985 shares of common out of 593,320 shares of common outstanding. The shares owned beneficially by Hecla were regularly voted at the meetings of Industries held in Delaware from 1940 through 1949.
In 1940 and 1941 Hecla actively engaged in Pennsylvania in the business of operating properties owned by it for the *70 mining, producing and selling of coal and the manufacture and selling of coke. Certain of its properties were operated by Hecla and others were leased. About the end of 1941 Hecla discontinued the mining, producing and selling of coal, etc. and from this time until May 29, 1945 Hecla only manufactured and sold coke which it produced except that at all times Hecla owned income-producing investments in other corporations and received rentals from leased coal properties. From May 29, 1945 until 1949 Hecla's business activities consisted in collecting income from its various investments and collecting rental from leased properties.
In the year 1949 Hecla had no net income from its non-investment assets; in fact, they were held at a loss to Hecla.
It may therefore be stated by the way of conclusion that at the date of service Hecla's business was almost exclusively the ownership of substantial blocks of stock in other corporations of which about $9,300,000 worth was in Delaware corporations and $1,400,000 in non-Delaware corporations. It also appears that the Hillman interest dominated Industries and that at least some of the officers and directors of Hecla were officers and directors of one or more of the Delaware corporations; further, that at least as to Industries, Hecla has consistently caused its stock in Industries to be voted in Delaware.
I must decide whether Hecla should be said to have been doing business in Delaware because of its large investments in Delaware corporations, because, in combination with others, it dominated the Delaware corporation involved, because it consistently voted its stock in Delaware and because at least some of its officers and directors were also officers and directors of the Delaware corporation. These facts must be evaluated against the background that Hecla was not created primarily to hold investments and in fact for many years actively operated a coal and coke business. Furthermore, Hecla also owns substantial holdings in the stock of non-Delaware corporations.
Many of the courts which have considered this problem have been influenced or governed by certain pertinent state constitutional and statutory provisions. No such provisions are here present.
As a general rule the mere ownership by a foreign corporation of stock in a domestic corporation does not constitute the doing of business by the foreign corporation in the state where the domestic corporation is located. This is true even though the foreign corporation owns the majority of the stock of the domestic corporation. See 17 Fletcher Cyc. Corps. (Perm.Ed.) Sec. 8490. Consequently, it is difficult to see how the fact (here assumed) that Hillman, Hecla, et al., dominated Industries, is a decisive factor. I say this because even direct domination and control by the foreign corporation  through a majority stock ownership  does not, in and of itself, result in the conclusion that the foreign corporation is doing business in the state of the domestic corporation. Thus something more than mere control by direct or indirect stock ownership would seem to be necessary if a different conclusion is to be reached. An examination of many of the cases where foreign corporations owning stock of domestic corporations were held to be doing business in the domestic state, reveals that the corporations were created primarily, if not exclusively, for that very purpose or were operating through foreign corporations in order to circumvent some public policy of the domestic state. Neither of those purposes can be inferred here on the facts presented. There is nothing to indicate that Industries did not operate as a distinct entity in the furtherance of its corporate purposes.
Plaintiff contends that the general rule is not applicable where the domestic corporation is the "mere alter ego, agent or instrumentality of the foreign corporation," and has lost its identity, citing 23 Am.Jur. Foreign Corps. Sec. 374. While there may well be situations where this principle could be applied, I find nothing in the record to bring this case within that principle.
Finally, plaintiff points to the fact that Hecla has consistently voted its stock in Delaware. I cannot believe that this is particularly significant since it is nothing *71 more than the utilization of the power implicit in the ownership of the stock. This state does not even require that its corporations hold their stockholders' meetings in Delaware. See General Corporation Law of Delaware, Sec. 32, Rev.Code 1935, § 2064. As we have seen, the ownership of the stock itself does not, in and of itself, constitute a decisive fact. I cannot see, therefore, how the voting of such stock in Delaware should alter the result.
I conclude that activities of Hecla in Delaware were not of such a quality and nature that it should be judicially determined that Hecla should in this case be subject to service of process in Delaware. Consequently, the service was not valid under the "doing business" theory.
Was there valid service on Hecla under Paragraph 4589 of the Revised Code of Delaware, 1935? Paragraph 4589, so far as pertinent, provides:
"when a cause of action arises in this State against any Corporation incorporated outside of this State, and there is no President or head officer of such corporation or any officer, director or manager thereof resident in this State, nor any certified agent thereof, for the service of process, resident in this State, process against such corporation may be served upon any Agent of such corporation then being in the State; and if such corporation shall appear, the suit shall proceed as in other cases, and if it shall not appear, the Plaintiff shall have judgment by default, or pro confesso decree, service of the process being first proved."
I must first determine whether, under the facts here present, the "cause of action" arose in Delaware. My decision is based on the assumption, also made by counsel, that compliance with the statutory requirements is here mandatory. The cause of action is the alleged unlawful diversion of three corporate opportunities. What was Delaware's "connection" with these unlawful acts? The opportunities were diverted from a Delaware corporation but it does not appear from the papers that the unlawful acts allegedly committed by Hecla  the purchase of certain stock  took place in Delaware. The sole substantial connection which Delaware had with the unlawful acts alleged, so far as the present facts show, was that the individuals who caused Hecla to take unlawful advantage of the corporate opportunities were officials of the defrauded corporation, as well as of the corporation (Hecla) which received some of the unlawful benefit. The alleged wrong was done to a Delaware corporation and the wrongdoers, apart from Hecla, were Delaware corporations and individual officers and directors of such corporations. However, none of the individual defendants resided in Delaware.
Hecla was not "doing business" in the state. Nor do I find that its connection with Delaware was of such a character that reasonableness and justice require that it be considered to have subjected itself to the jurisdiction of this state. Cf. Travelers Health Association v. Com. of Virginia ex rel. State Corp. Comm., 339 U.S. 643, 70 S.Ct. 927. Although the alleged injury was to a Delaware corporation, it does not necessarily follow that the "wrong" giving rise to the injury took place in Delaware. The meaning of the language "when a cause of action arises in this State" is not easy to ascertain when applied to situations such as that here presented. When a transaction takes place physically in this state or a tort is clearly committed in this state, then the language is reasonably clear. But, who is to say where the wrongs here alleged took place. Indeed, they may be said to have taken place in several states.
The existence of such complex variables seems to me to demonstrate that a better approach, and perhaps the only one possible under the Constitution, to a fair construction of the present statute is to be found by seeking to ascertain its apparent purpose. Its language shows that it was enacted to cover cases where a foreign corporation was a party to something which had taken place in Delaware and the foreign corporation did not have any agents within the state of the type who could normally (in the legal sense) be served with process. In such cases the statute makes service on any agent of the foreign corporation sufficient. The language of the *72 statute which speaks of causes of action arising in this state covers such matters as actions arising out of transactions or activities by the foreign corporation when "doing business" in this state. It also applies to those situations where the foreign corporation's actions in this state have been such that reasonableness and justice require that it be considered to have subjected itself to the jurisdiction of this state with respect thereto. Cf. Travelers Health Ass'n v. Com. of Virginia ex rel. State Corp. Comm., supra. Thus, my construction comports with due process requirements.
The language of the statute is far from clear but the construction I have placed on it is the best reading I can give to it. Under my construction of the statute, the causes of action set forth in the present complaint did not arise in Delaware because, as heretofore stated, Hecla was not "doing business" in Delaware at the date of service, and reasonableness and justice do not require a judicial determination that Hecla has subjected itself to the jurisdiction of this state. Moreover, the State of Delaware has no such impelling public policy concern here as existed, for instance, in Travelers Health Ass'n v. Com. of Virginia ex rel. State Corp. Comm., supra. There was no valid service of process on Hecla under Paragraph 4589 of the Revised Code of Delaware, 1935. It becomes unnecessary to decide certain other contentions of the parties. I note particularly that no sequestration question is before the court.
Order on notice.