SOCIEDAD TRANSOCEANICA CANO-PUS, S.A., Libelant,

v.

INTERAMERICAN REFINING CORPO-RATION, Respondent.

No. 468-60.

United States District Court
D. New Jersey.
July 8, 1960.

Steelman, Lafferty & Rowe, Newark, N. J., James McKeon, Jr., Newark, N. J., Poles, Tublin & Patestides, New York City, Melvin J. Tublin, New York City, of counsel, for libelant.

Stryker, Tams & Horner, by Walter F. Waldau, Newark, N. J., Gary O. Turndorf, Newark, N. J., on the brief, for respondent.

HARTSHORNE, District Judge.

█ Respondent here moves to vacate and set aside a foreign attachment levied by libelant on hundreds of thousands of barrels of fuel oil stored in tanks in Bayonne, New Jersey, and bonded to the United States Government through respondent's New Jersey office. The levy was made pursuant to Rule 2 of the rules of practice in admiralty cases, 28 U.S. C.A. The libel spells out a breach of a charter party agreement. The basis for the foreign attachment under Rule 2 is that the respondent could not be found in the District. The applicable principle of law is that "a foreign corporation can be said to be present and doing business within the jurisdiction when its activities within this district are sufficient to make it not unfair or unreasonable to require it to respond to suit in this forum." Federazione Italiana, etc. v. Mandask Compania, etc., D.C.S.D.N.Y. 1957, 158 F. Supp. 107, 109, citing many cases, including International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. A foreign attachment is thus levied in order to obtain

jurisdiction over the respondent, when the respondent cannot be found within the District in order to be served and it is not doing business in this District.

Respondent, in affidavits and in sworn testimony at a hearing before this Court, states that it maintains an office at the Bayonne Terminal Warehouse, with a telephone, with an assistant to the Vice President present in charge of the office during the working day from 9:30 A.M. to 4:30 P.M., and that this individual employee of the respondent has had previous dealings with one of libelant's other ships. Not only so, but since February, 1960, when respondent's New Jersey office was apparently opened, Leiva, in charge of that office, has handled at that office for respondent some 800,000 barrels in fuel oil and petroleum products and has arranged for respondent some fourteen shipments per month of an average of 3500 barrels per shipment over the past three months. In this regard he directed the necessary operations in checking, reporting and working with the United States Customs officials as to all this oil, which after being received at Bayonne, New Jersey, was stored in Government bonded tanks and transshipped in due course therefrom. The testimony further shows that all this physical handling of these tremendous quantities of oil was done by respondent's managing agent at its New Jersey office and at his full discretion, the bookkeeping and accounting records therefor being kept at respondent's New York office.

■■ While libelant shows that respondent was not listed in the New Jersey telephone book, this was clearly proven to be due to the fact that the current New Jersey telephone directory was not republished after respondent's New Jersey office was opened in February, 1960. Nor can this excuse libelant's lack of knowledge of the existence of this New Jersey office and the fact that it was doing business, with a telephone, since it stands undenied that respondent's New Jersey managing agent did this very same physical handling of a previous shipment of fuel oil from its New Jersey office by one of libelant's other ships. Nor does the fact that respondent has not filed a formal certificate to do business in New Jersey at all determine that it cannot be found in the New Jersey District. While the lack of this certificate may prevent respondent from bringing suit in the New Jersey courts, or perchance affect the right of a suitor in the State courts to obtain an attachment in such courts, that has no bearing whatever on libelant's right to obtain a foreign attachment in admiralty against the respondent. That right only exists if respondent cannot be found within the District, so that a foreign attachment will lie to give this Court jurisdiction over the respondent. The existence in New Jersey of this office of respondent, with its name on the door, with its listed telephone, open every day during regular business hours, where the agent in charge regularly handles within his sole discretion hundreds of thousands of barrels of fuel oil, including receiving it, bonding it with the Government officials, and transshipping it, certainly indicates that respondent is present within the District, and that respondent has such contacts with the District that the maintenance of a suit in admiralty, after personal service upon respondent at such office, would certainly not "offend traditional notions of fair play and substantial justice," International Shoe Co. v. State of Washington, supra; Travelers Health Ass'n v. Commonwealth of Virginia, 1950, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154. Indeed, Leiva, in charge of doing all this work of respondent's New Jersey office at his discretion, was certainly the managing agent in charge of that office and, as such, service on him would constitute valid service on the respondent as found within the jurisdiction, F.R.Civ.P. 4(d) (3, 7), 28 U.S.C.A.

At the hearing libelant further questioned respondent's ownership of the oil in question. Of course, if respondent had no interest in the oil, it would not be the proper party to move to vacate the attachment. However, it was brought out

at the hearing that respondent had a definite property interest in the oil, though such interest might not be completely exclusive.

■ It further seems clear that libelant did not make reasonable efforts to locate the respondent in the District before seeking the aid of the Marshal in levying the foreign attachment in question. Indeed, if libelant did not make a bona fide effort to locate the respondent, the foreign attachment would seem invalid. *Federazione,* supra. Having already dealt with respondent's managing agent at his New Jersey office on a previous shipment, it would have been simple to locate this New Jersey office and this agent in charge again. Furthermore, even if it could not find respondent's telephone listed in the New Jersey telephone book, a call to "Information" would have produced immediate results. But, instead of doing any or all of these normal things, the respondent never even directed the Marshal to seek personal service. It wrote the Marshal,[1]

"We seek the attachment of certain fuel oils belonging to the said respondent."

After advising of their location, libelant closed its letter, saying,

"Will you please attach the aforesaid in accordance with the complaint?"

In short, instead of helping the Marshal locate the respondent within the District, libelant indicated to the Marshal that the respondent was not to be found within

the District, and that therefore he should "attach" the fuel oils, upon the assumption that the respondent was not to be found. Not only so, but it appears that the Marshal did not arrive at the locale indicated until after ordinary business hours, whereupon he delivered the papers to a guard acting for a third party. Obviously, so far as locating the respondent personally was concerned, this was a mere gesture carried out on the instructions of the libelant, instead of being a bona fide effort to locate the respondent.

■ The cases relied on by libelant are not at all helpful to it. In *Melmay,* an unofficially reported opinion of the United States District Court, Canal Zone, Balboa Division, July 25, 1932, reported in 1933 A.M.C. 1057, an attachment was permitted to stand, although the proctor for the respondent had made it known that he would accept service of process on any suit that would be filed. However, in that case respondent was not doing business in the Canal Zone and the fact that an attorney notifies the Marshal that he would represent respondent in all future cases and be amenable for service in such cases was held not to be sufficient to vacate the attachment. That is not the situation here, though respondent has in fact entered its voluntary appearance in this suit. Respondent here was doing business and could be found in the District. In Swift & Co. Packers v. Compania Colombiana, etc., 1950, 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206, also relied on by libelant, Mr. Justice Frank-

1. The complete letter is as follows:
"We have this day filed a libel and complaint against Interamerican Refining Corporation in which we seek the attachment of certain fuel oils belonging to the said respondent. We are advised that the said fuel oils are stored at the Bayonne Terminal Warehouse Corporation, East 22nd Street, City of Bayonne, State of New Jersey, storage tanks as follows:
"Approximately 10,000 barrels of fuel oils in tanks numbered 3841, 3483 and 3836

"Approximately 120,000 barrels of fuel oils in tanks numbered 3833, 3842, 3844 and 6010
"160,000 barrels of fuel oil in tank no. 6007
And other fuel oils store in the tanks of the Bayonne Terminal Warehouse Corporation, which said property and fuel oils are within this District.
"Will you please attach the aforesaid in accordance with the complaint?"

furter describes a foreign attachment as not only being for purposes of service of process but also to be used for security in cases of fraud. In that case, however, the fraud was alleged in an amended libel, and the foreign attachment followed that amended libel. In the instant case the libel does not allege fraud of any type and the attachment was based solely on the allegation that respondent could not be found in the District. Libelant indicates a desire to amend its libel, if necessary, to include fraud. If and when libelant chooses to do so, and is permitted to do so by the Court, nevertheless, a new foreign attachment would have to be made under that amended libel. The present foreign attachment is governed solely by the libel under which it was served.

That the belated hour of the attachment does not constitute fair dealing is indeed set forth in the *Melmay* opinion where the Court says, quoting from Benedict on Admiralty, 5th ed., § 290, 6th ed. § 289:

"* * * But there must be fair dealing on the part of the libellant and it will not do to direct the marshal to the defendant's residence or place of business at a time when it is known that he is temporarily absent or to delay the issuing of process for the sole purpose of securing an attachment when it is known the respondent can be served personally. * * *"

This simply reenforces the previously stated point that there must be an essential bona fide attempt to find respondent in the District before the foreign attachment can be levied. The attempt to locate and serve the respondent not being made bona fide, and this improper action having been taken at the express direction of libelant, the foreign attachment levied must be vacated and set aside.

An order may be entered accordingly.