Argued April 23, affirmed in part; reversed
and remanded in part September 25, reconsideration
denied December 13, 1979, petition for review
denied January 22, 1980 (288 Or 493)

STATE ex rel HEALY,
*Appellant,*

*v.*

HOUSTON, et al,
*Defendants,*
WILSON,
*Respondent.*

(No. 409-888, CA 8835)

600 P2d 886

Jan P. Londahl, Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Jeffrey M. Batchelor, Portland, argued the cause for respondent. With him on the brief were Fred M. Aebi and Gearin, Landis & Aebi, Portland.

Before Schwab, Chief Judge, and Tanzer and Richardson, Judges.

TANZER, J.

## TANZER, J.

This is a state's appeal from a decree for defendant Wilson in a suit brought by the Corporation Commissioner to enjoin violations of the Oregon Blue Sky Laws, ORS ch 59, and to require defendants to make restitution to purchasers of its precious metal storage certificates or to pay damages as provided by ORS 59.115(2)(b).

Defendant Wilson, a resident of Missouri, was the secretary, general counsel and a member of the board of directors of Western Pacific Gold and Silver Exchange Corporation (Western Pacific), a Delaware corporation whose primary business was the purchase and sale of silver coins and bullion. A Portland branch of Western Pacific was formed in July or August of 1974. The corporation sold silver over the counter or on a 30, a 60 and, until September 18, 1974, a 90-day delayed delivery basis. Upon tender of the purchase price customers received certificates representing the silver to be delivered. There was a ten percent commission for over-the-counter sales, a four percent delivery charge for 30-day delivery sales, no commission charge for 90-day delivery sales and proportionately calculated charges for sales for delivery between 30 and 90 days.[1] If the customer wanted to resell to Western Pacific before delivery he could present his certificate and the corporation would repurchase the silver for five cents over the spot (current market) price plus a commission.

A securities examiner for the Corporation Commissioner investigating the dealings of Western Pacific contacted defendant Wilson on August 7, 1974. He told Wilson that the Commissioner was concerned about the way Western Pacific was doing business in Oregon and was proposing a cease and desist order due to the

---

[1] The trial court found that 30 days is a reasonable time in which to procure, refabricate and deliver silver. It therefore concluded that the 30-day delivery agreements were not securities. This conclusion is not challenged on appeal.

[289]

apparent commingling of customers' investments with the corporation's general funds.[2] Wilson agreed to provide answers to any written questions. A notice of a Proposed Order to Cease and Desist had been signed August 2, 1974, and served on the Portland office of Western Pacific. Wilson retained Oregon counsel to respond to the questionnaire on behalf of Western Pacific.

Previously, on July 23, 1974, the securities examiner had visited the Portland office of Western Pacific and informed defendant Dusenberry, the Portland branch manager, that he thought the 90-day delayed delivery certificates were not sales of commodities but rather sales of evidence of indebtedness and hence were securities. In late August of 1974, Dusenberry informed Wilson of the securities examiner's position that the sale of the 90-day certificates were securities and must be registered prior to sale.

From March 11, 1974, until the filing of the complaint Western Pacific failed to meet a number of obligations to deliver silver. Altogether 35 customers of the Portland office paid a total of $126,552.05 and did not receive silver in return. Of these, at least 11 sales of 60 and 90-day certificates to nine customers appear to have been made after August 7, the date of the examiner's conversation with Wilson, and before latter October[3] when Wilson left his corporate post.

On January 7, 1975, a complaint for injunction and restitution or damages was served on the Corporation Commissioner pursuant to ORS 59.155 and 15.080(6), charging that Wilson and the other defendants were engaging in the sale of unregistered securities in

---

[2] There was no specific finding regarding this conversation. The examiner testified as set out above. Wilson acknowledged that the conversation occurred. He did not deny the examiner's account, but he remembered no discussion of what the Corporation Commissioner was concerned about. We believe the examiner's testimony in this regard to be credible.

[3] We have used October 21 for this calculation. Wilson testified only that he resigned in "latter October."

violation of ORS ch 59. A default decree was entered against defendant Wilson,[4] who then filed a motion to quash service and to set aside the decree. The trial court denied the motion to quash and allowed the motion to set aside the decree as to him.

Wilson answered by setting up the affirmative defense of ignorance provided in ORS 59.115(3). The trial court, sitting without a jury, found that Wilson had established his affirmative defense and entered a decree in his favor. We review de novo, ORS 19.125(3).

## JURISDICTION

Before reaching the merits we deal with Wilson's contention that the trial court should have granted his motion to quash service. A copy of the summons and complaint was personally served on Wilson in Missouri pursuant to the so-called long-arm statute, ORS 14.035(3). Wilson argues that he was not personally subject to the court's jurisdiction.

### The long-arm statute

■ The initial question is whether Wilson's conduct constituted the transaction of business in Oregon as that term is used in ORS ORS 14.035(1)(a) which provides:

> "(1) Any person, firm or corporation whether or not a citizen or a resident of this state, who, in person or through an agent, does any of the actions enumerated in this subsection, thereby submits such person and, if an individual, his personal representative to the jurisdiction of the courts of this state, as to any cause of action or suit or proceeding arising from any of the following:
>
> "(a) The transaction of any business within this state * * *."

---

[4] Defendant Dusenberry was dismissed from the case. Defendant Eads was not served and proceedings against defendant Western Pacific Gold and Silver Exchange were stayed by the bankruptcy court in Nevada. Default decrees were taken against defendants Houston, Anondson and Wilson.

Sufficient facts to establish long-arm jurisdiction over Wilson were shown by affidavits relating to the motion to quash service upon him. Wilson, acting at all times both as general counsel and as secretary of Western Pacific, had attempted to secure insurance to cover the customers of Western Pacific during the period between purchase and delivery of silver. He was apparently responsible for the corporation's dealings with plaintiff during the investigation of Western Pacific's activities in Oregon. He engaged Oregon counsel for Western Pacific and, through counsel, provided information on behalf of the corporation such as, for example, a representation that the corporation was solvent. On September 26, 1974, he signed and on October 10 he filed with plaintiff an application for authority of Western Pacific to engage in the business of buying and selling precious metals in Oregon. All of these activities as a corporate officer were performed to enable Western Pacific to continue in business in Oregon. They are sufficient to constitute the transaction of business in Oregon as required by ORS 14.035(1)(a).[5]

*Due process*

 The long-arm statute is to be applied as extensively as the constitution allows because the legislative intent was to "exploit the outer limits of due process in aid of [Oregon] litigants." *State ex rel Western Seed v. Campbell* , 250 Or 262, 271, 442 P2d 215 (1968) *cert den* 393 US 1093 (1969). Whether due process would permit a state court to assert long-arm jurisdiction over a nonresident defendant depends on whether the defendant had sufficient contacts with the state to make the exercise of its jurisdiction fair. As the United States Supreme Court stated the test:

"* * * due process requires only that in order to subject a defendant to a judgment in personam, if he

---

[5] Plaintiff argues that, under ORS 59.115(3), Wilson is liable for acts of the corporation and therefore the transaction of business in Oregon by the corporation was the transaction of business by Wilson. We deal with this subject below, but do not reach it as it applies to long-arm jurisdiction.

be not present in the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Company v. State of Washington*, 326 US 310, 316, 66 S Ct 154, 90 L Ed 95 (1945).

■ Defendant's contacts with this state were substantial and continuous. He arranged for the formation of the corporation and the registration of it to do business in this state, and once the Commissioner's investigation began he made representations to the Commissioner as to the financial status and accounting procedures of the corporation. He took an active role in the business of the corporation which is alleged to be in violation of Oregon's securities laws. Unlike *Shaffer v. Heitner*, 433 US 186, 97 S Ct 2569, 53 L Ed 2d 683 (1977), where there was no long-arm jurisdiction because "[a]ppellants have simply had nothing to do with the state of Delaware [and] had no reason to expect to be hauled before a Delaware court," 433 US at 216, Wilson dealt with Oregon on behalf of the corporation and had reason to expect that he might have to defend himself in an Oregon court. Rather, this case is like *Black & Company v. Nova-Tech, Inc.*, 333 F Supp 468 (D Or 1971), which concerned corporate counsel whose sole participation was to do legal work enabling the corporation to sell securities. Long-arm personal jurisdiction over the lawyer was allowed on the basis that he "was a participant in the sale because, without his assistance [*e.g.*, preparation of sale papers, use of firm name as counsel on annual reports], the sale would not have been accomplished." 333 F Supp at 472. Similarly, it is fair to hold that Wilson should be subjected to an adjudication in an Oregon court regarding his own acts and those of the corporation relating to business in Oregon.

■ Additionally, the inconvenience to defendant in requiring him to litigate in a distant forum is outweighed by the greater inconvenience suffered by the State of Oregon and the individual investors if they

were forced to litigate the case wherever they had to go to find each of the defendants.

Finally, the State of Oregon has a number of interests to be served by exercising jurisdiction: first, its interest in applying its law for the protection of its residents who claim to have been the victim of a tort by the resident of another state, *State ex rel Academy Press v. Beckett*, 282 Or 701, 708, 581 P2d 496 (1978); second, the "manifest regulatory interest" in seeing its Blue Sky Laws enforced, *Travelers' Health Assoc. v. Virginia*, 339 US 643, 70 S Ct 927, 94 L Ed 1154 (1950); and third, its interest in seeing the conduct of corporate fiduciaries adjudicated under the laws which create and regulate them. *See Santa Fe Industries, Inc. v. Green*, 430 US 462, 478-80, 97 S Ct 1292, 51 L Ed 2d 480 (1977), and *Court v. Ash*, 422 US 66, 84-85, 95 S Ct 2080, 45 L Ed 2d 26, (1975).

We therefore conclude that because Wilson had substantial and continuing contacts with Oregon, Oregon is a convenient forum, and because Oregon has a public policy interest in Oregon adjudication, Wilson may lawfully be subjected to the jurisdiction of the courts of Oregon. The motion to quash service was properly denied.

## THE MERITS

This case is controlled by ORS 59.115. Subsections (1)(a) and (b) provide that any person who sells an unregistered security is liable to the purchaser:

"(1) Any person who:
"(a) Offers or sells a security in violation of the Oregon Securities Law or of any rule or order of the commissioner, or of any condition, limitation or restriction imposed upon a registration under the Oregon Securities Law; or
"(b) * * * is liable as provided in subsection (2) of this section to the person buying the security from him."

The evidence clearly establishes that the 60 and 90-day certificates representing future obligations and

interests are securities,[6] that they were not registered and that Western Pacific sold them.

■ Subsection (3) provides that any officer or director of a seller is co-extensively liable unless he proves that he did not and could not reasonably have known "of the existence of the facts on which the liability is based":

> "Every person who directly or indirectly controls a seller liable under subsection (1) of this section, every partner, officer, or director of such seller, every person occupying a similar status or performing similar functions, and every person who participates or materially aids in the sale is also liable jointly and severally with and to the same extent as the seller, unless the nonseller sustains the burden of proof that he did not know, and, in the exercise of reasonable care, could not have known, of the existence of the facts on which the liability is based. Any person held liable under this section shall be entitled to contribution from those jointly and severally liable with him."

Until latter October, Wilson was an officer and director of Western Pacific. He is therefore liable for transactions to that time unless he has proved his ignorance of the facts.

■ The trial court found that Wilson did not and could not reasonably have known (1) that Western Pacific failed to disclose to purchasers of the certificates the actual facts regarding diversion of funds and dependence upon future sales, and (2) that Western Pacific

---

[6] ORS 59.015(13)(a) defines a security as

"* * * a note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in a pension plan or profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, certificate of interest or participation in an oil, gas, or mining title or lease or in payments out of production under such title or lease, or, in general, any interest or instrument commonly known as a 'security,' or any certificate of interest or participation in, temporary or interim certificates for, receipt for, guarantee of, or warrant or right to subscribe to or purchase any of the foregoing."

was selling the certificates in Oregon without having registered them. Additionally, Wilson asserts on appeal that he has proved that he could not have known of the diversion of funds to the corporation's general funds. Because the commingling of purchaser's funds with the corporation's treasury establishes the common venture aspect of the proof of a security and is a fact on which liability is based, Wilson argues that he cannot be liable because he did not know and could not reasonably have known it. We will not disturb the trial court's finding of ignorance as it applies to transactions prior to August 7, 1974. On and after that date, however, the story is different.

Upon being informed on August 7 that the Corporation Commissioner was preparing a hearing on a cease and desist order because the possibility of commingling of corporate and customers' funds was apparent, Wilson, as a corporate officer, was on notice of the existence of a problem he was bound to investigate. Had he investigated, he would likely have found the truth. Instead of finding out what was going on, he merely retained Oregon counsel to represent Western Pacific in its dealings with the Oregon Corporation Commissioner. Therefore, we find that Wilson has not carried his burden of proof under ORS 59.115(3) that "in the exercise of reasonable care [he] could not have known" of the commingling.

We therefore conclude that Wilson is liable for transactions occurring after August 7, 1974, and before his severance from the corporation in latter October.[7] Because the severance date is not fixed in the evidence, we remand for further proceedings to determine the specific extent of Wilson's liability.

Affirmed in part; reversed and remanded in part.

---

[7] We do not hold that liability cannot extend beyond a severance date in a proper case; only that there is no reason to so hold in this case.