[No. A032845. First Dist., Div. Three. Feb. 6, 1986.]

A.I.U. INSURANCE COMPANY et al., Petitioners, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent;
OIL INSURANCE LIMITED, Real Party in Interest.

## COUNSEL

Buchalter, Nemer, Fields, Chrystie & Younger, Robert A. Zeavin, Deborah A. Pitts, Victor Rabinowitz, Hancock, Rothert & Bunshoft, Barry L. Bunshoft, James P. Barber, Forrest Booth, Vito Peraino, Rogers & Wells, Mitchell L. Lathrop, Terrence L. Bingman, Kimball A. Lane, Kathy Waring, Wilson, Morton, Assaf & McElligott, Thomas B. Adams, Simpson, Thacher & Bartlett, Barry Ostrager, Dennis G. Jacobs, Mary Kay Vyskocil, Bernard P. Bell, Catherine M. Flanagan, Dinkelspiel, Donovan & Reder and Barry W. Lee for Petitioners.

No appearance for Respondent.

Brobeck, Phleger & Harrison, E. Judge Elderkin, William S. Boyd, John E. Schulz, Stephen L. Meagher, Michael R. Nave, Cahill, Gordon & Reindel, William E. Hegarty and Thorn Rosenthal for Real Party in Interest.

## OPINION

**SCOTT, J.**—This petition challenges a trial court ruling quashing service of process for insufficient contacts to justify long-arm jurisdiction over a Bermuda insurance company. It raises the question of whether the insurer of very substantial California risks and property may avoid the jurisdiction of California courts by structuring its affairs so that most contacts with the insureds take place outside of the United States. We conclude that the insurer's contacts with California suffice for exercise of jurisdiction by the California courts.

The states of California and Colorado, the United States Environmental Protection Agency and the United States Army are suing Shell Oil Company (Shell) for damages and clean-up costs for pollution of the Rocky Mountain Arsenal in Colorado and of a toxic waste site near Fullerton, California. Damages of around $2 billion are sought for pollution alleged to have taken place over the last 35 to 40 years, primarily at the Colorado site. Shell has sued some 250 insurance companies in San Mateo County Superior Court,

seeking declaratory relief concerning coverage by various primary and excess general liability policies held by Shell and its corporate predecessors. Some of the defendants have cross-complained against Oil Insurance Limited (O.I.L.), a mutual insurance company created by about 35 major oil companies, including Shell. The cross-complainants contend that O.I.L.'s policy, issued in 1976, covers some or all of the damages.

O.I.L., a Bermuda-based company, moved to quash service for lack of personal jurisdiction over the corporation. The motion was granted, leading to this petition for writ of mandate filed on behalf of a number of the cross-complaining insurance companies.

■ "Where a defendant properly moves to quash out-of-state service for lack of jurisdiction, the burden is upon the plaintiff to establish the facts of jurisdiction by a preponderance of the evidence. [Citation.] When the evidence of jurisdictional facts, which may be in the form of declarations, is in conflict the trial court's resolution thereof will not be disturbed if supported by substantial evidence. [Citations.] On review of an order granting a motion to quash, the facts must be viewed most favorably to the defendant. [Citations.]" (*Messerschmidt Development Co.* v. *Crutcher Resources Corp.* (1978) 84 Cal.App.3d 819, 825 [149 Cal.Rptr. 35].)

For the most part, the facts are not in dispute, most of the operative facts having been provided by stipulation. The facts, viewed most favorably to O.I.L., show that O.I.L. is a mutual insurance company based in and incorporated under the laws of Bermuda. Its sole office is there and its officers and employees are all residents of Bermuda. All of its insurance policies have been issued in Bermuda, and O.I.L.'s shareholders' agreement, pursuant to which the policies are issued, has been signed by each shareholder/policyholder in Bermuda or in another location outside the United States. O.I.L. is not and has not been taxed by the United States or any state of the United States.

During the formation of O.I.L. in 1972, the five oil company representatives participating in its formation had contact with California. One was a California resident. Others communicated with him by letter and telephone. O.I.L. was created in part because of the reaction of traditional insurers to the Santa Barbara oil spill.

O.I.L.'s shareholders/policyholders are 35 large petroleum companies. In order to obtain insurance, a company must become a shareholder in O.I.L. and agree to the provisions of the shareholders' agreement. The terms of each insurance policy are prescribed by exhibits to the shareholders' agreement. The policies expressly provide that the only means for resolving dis-

putes thereunder is by arbitration in London, applying New York law. In the 13 years of O.I.L.'s existence, no suit concerning a policy claim has ever been brought or threatened in a court in the United States or any foreign country. O.I.L. has not anticipated that it would be haled into court in California.

Three of O.I.L.'s shareholders/policyholders are major oil companies headquartered in California: Atlantic Richfield Company, Chevron Corporation, and Unocal Corporation. O.I.L. has sent copies of its policies of insurance from Bermuda to these shareholders/policyholders in California, and it has received over $145 million in premiums from those three companies since 1972. The insurance policies sent to California were merely convenience copies, not binding contracts.

These California-based oil companies and other shareholders/policyholders of O.I.L. have substantial assets and insure substantial risks in California. However, O.I.L. provides worldwide coverage for its insureds calculated without regard to location of the various assets. Since its creation in 1972, O.I.L. shareholders/policyholders have submitted claims for losses in California totaling over $34 million, and O.I.L. has made payments of over $25 million for such claims. O.I.L. has sent persons from United States affiliates of nonexclusive agents to California in connection with the adjustment of claims for losses in California. Certain claims payments have been sent by wire transfer to banks located in California, and O.I.L. has received wire transfers of premium payments from one shareholder/policyholder's California bank account. Two members of O.I.L.'s board of directors are residents of California.

Less than 10 percent of O.I.L.'s shareholders/policyholders are headquartered in California, and less than 15 percent of the total premiums received by O.I.L. have been from California shareholders/policyholders. Only 3 of 188 claims made against O.I.L. have involved losses in California (two refinery fires and storm damage to an offshore oil facility).

### *Were O.I.L.'s Contacts With California Sufficient to Justify Long-arm Jurisdiction?*

By statute, "[a] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." (Code Civ. Proc., § 410.10.)  ■  Over 40 years ago, the United States Supreme Court explained that the due process clause of the Fourteenth Amendment of the United States Constitution bars the states from entering judgments affecting the rights or interests of a nonresident defendant absent such "minimum contacts" with the state that "the maintenance of the suit

does not offend 'traditional notions of fair play and substantial justice.'" (*Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316 [90 L.Ed 95, 102, 66 S.Ct. 154, 161 A.L.R. 1057].) In the intervening 40 years, elements of the "minimum contacts" test have been further refined, and the test has been generally liberalized due to the "fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." (*McGee* v. *International Life Ins. Co.* (1957) 355 U.S. 220, 222-223 [2 L.Ed.2d 223, 226, 78 S.Ct. 199].)

In spite of liberalization of the "minimum contacts" test, courts have not abandoned all restrictions on suing nonresident defendants. ■ Thus, in *Hanson* v. *Denckla* (1958) 357 U.S. 235, 253 [2 L.Ed.2d 1283, 1298, 78 S.Ct. 1228], the court held that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," and in *World-Wide Volkswagen Corp.* v. *Woodson* (1980) 444 U.S. 286 [62 L.Ed.2d 490, 100 S.Ct. 559], the court applied the "purposefully avails" standard to exempt from Oklahoma's jurisdiction defendants who had merely placed a Volkswagen in the stream of commerce by selling it in New York knowing that it might be driven in other states. The opinion distinguished a local retailer or distributor from a major manufacturer or distributor who delivered its products into the stream of commerce "with the expectation that they will be purchased by consumers in the forum State." (*Id.*, at p. 298 [62 L.Ed.2d at p. 502].) In the latter case, the manufacturer " 'benefits legally from the protection provided by the laws of the forum state for its products, as well as economically from indirect sales to forum residents.' " (*Asahi Metal Industry Co., Ltd.* v. *Superior Court* (1985) 39 Cal.3d 35, 45 [216 Cal.Rptr. 385, 702 P.2d 543], quoting from *DeJames* v. *Magnificence Carriers, Inc.* (3d Cir. 1981) 654 F.2d 280, 285.)

Although there are many decisions applying the "minimum contacts" test to manufactured products (see *Asahi Metal Industry Co., Ltd.* v. *Superior Court, supra,* 39 Cal.3d 35, and cases cited therein), decisions concerning insurance contracts are scarce. In *Travelers Health Assn.* v. *Virginia* (1950) 339 U.S. 643 [94 L.Ed. 1154, 70 S.Ct. 927], an early example, the court sustained Virginia's jurisdiction over a Nebraska insurer conducting a mail-order health insurance business. The insurer had signed up 800 Virginia members by encouraging members to recommend the association to friends

and submit their names to the home office, and by then mailing solicitations and applications to these prospects. The *Travelers* court found that "where business activities reach out beyond one state and create continuing relationships and obligations with citizens of another state, courts need not resort to a fictional 'consent' in order to sustain the jurisdiction of regulatory agencies in the latter state." (*Id.*, at p. 647 [94 L.Ed. at p. 1161].) It observed that "[t]he Association did not engage in mere isolated or short-lived transactions. Its insurance certificates, systematically and widely delivered in Virginia following solicitation based on recommendations of Virginians, create continuing obligations between the Association and each of the many certificate holders in the state." (*Id.*, at p. 648 [94 L.Ed. at p. 1161].) It based its decision in part upon the observation that "if Virginia is without power to require this Association to accept service of process on the Secretary of the Commonwealth, the only forum for injured certificate holders might be Nebraska. Health benefit claims are seldom so large that Virginia policyholders could afford the expense and trouble of a Nebraska lawsuit. In addition, suits on alleged losses can be more conveniently tried in Virginia where witnesses would most likely live and where claims for losses would presumably be investigated." (*Id.*, at pp. 648-649 [94 L.Ed. at p. 1161].)

■ *McGee* v. *International Life Ins. Co.*, *supra*, 355 U.S. 220, demonstrates that an insurance company's contact with the forum state need not be systematic and continuous if the lawsuit arises out of purposeful contact with the state. In *McGee* a California resident had purchased a life insurance policy from the Empire Mutual Insurance Company, an Arizona corporation. When International Life Insurance Company agreed to assume Empire's insurance obligations it mailed a reinsurance certificate to the insured, offering to insure him in accordance with the terms of the Empire policy. He accepted the offer and from that time until his death paid premiums by mail from his California home to International's Texas office. Neither Empire nor International had any office or agent in California and, on the record before the court, International had never solicited or done any insurance business in California apart from the policy involved therein. Nonetheless, the *McGee* court upheld California's jurisdiction over International: "Turning to this case we think it apparent that the Due Process Clause did not preclude the California court from entering a judgment binding on respondent. It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State. [Citations.] The contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he died. It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. These residents would be at a severe disadvantage if they were forced to follow

the insurance company to a distant State in order to hold it legally accountable. When claims were small or moderate individual claimants frequently could not afford the cost of bringing an action in a foreign forum—thus in effect making the company judgment proof. Often the crucial witnesses—here on the company's defense of suicide—will be found in the insured's locality. Of course there may be inconvenience to the insurer if it is held amenable to suit in California where it had this contract but certainly nothing which amounts to a denial of due process." (*Id.*, at pp. 223-224 [2 L.Ed.2d at p. 226].)

Closer in some ways to this case than *Travelers* or *McGee* is a Third District case almost overlooked by the legal community. In *McClanahan* v. *Trans-America Ins. Co.* (1957) 149 Cal.App.2d 171 [307 P.2d 1023], Washington residents who were injured in a Shasta County automobile collision sued Trans-America Insurance Company for failure to pay the judgment recovered against its insureds. Defendant moved to quash, asserting that it was an Alabama corporation not qualified to do business in California, that it had written no insurance policies in the state, had no agents, jobbers or independent contractors who solicit business for it here, and maintained no office or place of business in California. Its only contact with the state was that it insured motorists who sometimes operated their vehicles in California and that under the terms of the policies it was obligated to investigate accidents in this state and employ attorneys, investigators and adjustors to adjust and negotiate claims, defend actions, and pay judgments arising out of actions against its policyholders in this state.

The policyholders in *McClanahan* were residents of Colombia, South America. After the accident, Trans-America employed an adjustment service agency to investigate the claims, engaged two doctors to examine plaintiff and/or testify at trial, and engaged attorneys to handle the lawsuit. In finding jurisdiction over the Alabama company, the court stated: "It could be said that from the very nature of defendant's business, the insuring of automobile owners, that whenever it issued a policy of automobile insurance, the defendant contemplated that the holder thereof might at some time be a user of the highways of this state, subject to all of the hazards of such use, and hence knew it would be necessary to come into the courts of this state to assert its rights and defend its obligations under such policies. . . . [W]e may note that by the very terms of the policy, it was the defendant insurance company which, upon notice of the accident, for all practical purposes became a real party in interest—it took over the complete control of all aspects of the case from a defense standpoint. In fact, had not the Galloways placed the entire case in defendant's hands to compromise or

defend as it saw fit, such action on their part could well have resulted in a breach of the contract of insurance. The activities of the defendant under the circumstances shown cannot be gauged, as did the trial court, on the basis of one lawsuit or one visit by a corporate agent, or the fact that the defendant carried on no solicitation in this state." (*Id.*, at p. 174.)

Although *McClanahan* has rarely been cited and has not been applied by a California court, it has been characterized by a legal commentator as "the furthest extension of jurisdiction based on an isolated contract . . . ." (Comment, *Developments in the Law, State-Court Jurisdiction* (1960) 73 Harv.L.Rev. 911, 928.) Witkin reads *McClanahan* to suggest that an automobile insurance company is a "special type of foreign corporation [that] necessarily does business in all the states, and cannot avoid jurisdiction . . . ." (2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, § 121, p. 498.)

None of these insurance cases precisely mirrors O.I.L.'s contact with California, but each provides some insight into the considerations affecting the decision in this case. Many of the reasons for holding the out-of-state insurers subject to jurisdiction in *Travelers, McGee* and *McClanahan* apply equally to jurisdiction over the insurer for an oil company with significant assets and activities in California.

■ Before considering the specific contacts of O.I.L. with California, we note that "[a] distinction is made between a cause of action arising out of or in connection with a nonresident defendant's forum-related economic activity and a cause of action entirely distinct from that activity. When the cause of action *arises out of the forum-related economic activity,* the forum state will entertain jurisdiction over the nonresident defendant. An isolated act of economic activity, such as the making and performance of a contract in the forum state, may be sufficient to accord the forum state jurisdiction over the defendant when the cause of action is related to that isolated act of economic activity. [Citations.] Where, however, the cause of action is *entirely distinct from the forum-related economic activity,* the defendant cannot be sued in the forum state unless that economic activity has reached '. . . such extensive or wide-ranging proportions as to make the defendant sufficiently "present" in the forum state . . .' to support jurisdiction over him. [Citations.]" (*Sanders* v. *CEG Corp.* (1979) 95 Cal.App.3d 779, 784 [157 Cal.Rptr. 252].)

Here, the cause of action asserted against O.I.L. arises in part out of its forum-related activities—insurance of Shell's assets and activities in Cali-

fornia. Thus, the economic activity in California need not be extensive or wide-ranging.

■ Relying upon *Worldwide Volkswagen Corp.* v. *Woodson, supra,* and noting the forum-selection clause in its insurance contracts, O.I.L. argues that it did not anticipate being sued in California. But the question is not what O.I.L. *did* anticipate, but what it *reasonably should have* anticipated. Were the "defendant's conduct and connection with the forum State [] such that he should reasonably anticipate being haled into court there[?] [Citations.]" (444 U.S. at p. 297 [62 L.Ed.2d at p. 501].)

■ Comparing O.I.L.'s contacts with those of the insurers in *McGee* and *McClanahan,* it is apparent that jurisdiction over O.I.L. is warranted. In *McGee* the insurer's only contact with California was an insurance contract sent to a California resident, followed by the insured's payment of premiums. Here, the insurer has insured three major California-based oil companies and the California operations of numerous other companies. It has received over $145 million in premiums from the California companies and has made payments of over $25 million for California losses. The mere device of entering these contracts in Bermuda rather than mailing the agreements to the insureds cannot insulate O.I.L. from the impact of these activities upon California. Nor can O.I.L.'s forum selection clause ipso facto deprive insureds, beneficiaries, persons injured by the insureds' activities, or other potential plaintiffs of a California forum for suit. An insurer who derives such significant economic benefit from insuring California assets and activities must expect correlative burdens.

O.I.L.'s position is much like that of the insurer in *McClanahan*—it issued insurance with world-wide coverage and could reasonably have anticipated California losses. In fact, O.I.L. had much greater reason to expect California losses because it insured stationary assets and activities located in California. It is true that O.I.L. made no agreement with the insureds to investigate and defend actions wherever they arose, as had the insurer in *McClanahan.* However, when losses have taken place in California, O.I.L. has asked adjustors to come to this state to investigate and negotiate, as any reasonable insurer would be expected to do. The mere fact that the contract did not oblige O.I.L. to send investigators or employ attorneys to defend actions in California does not make California's jurisdiction over O.I.L. unreasonable.

We conclude that the trial court erred in quashing service of process upon O.I.L. Let a peremptory writ of mandate issue directing the San Mateo

County Superior Court to vacate its order granting O.I.L.'s motion to quash.[1]

White, P. J., and Merrill, J., concurred.

A petition for a rehearing was denied March 5, 1986.

---

[1]An order granting a motion to quash is appealable. (Code Civ. Proc., § 904.1, subd. (c).) However, under the circumstances of this case, appeal is not an adequate remedy. The court did not merely grant O.I.L.'s motion to quash. It also stayed Shell's action against the 250 insurance companies because of O.I.L.'s absence. The writ we issue will place the case back on the track and render moot Shell's pending writ petition challenging the trial court's stay order. (*Shell Oil Company* v. *Superior Court* (Feb. 7, 1986) A032788 [nonpub. opn.].)