**ST. PAUL SURPLUS LINES INSURANCE COMPANY and St. Paul Fire and Marine Insurance Company, Plaintiffs,**

v.

**CANNELTON INDUSTRIES, INC., and Algoma Steel Corporation, Limited, Defendants.**

No. 2:92–CV–162.

United States District Court, W.D. Michigan, N.D.

July 1, 1993.

Stephen M. Kelley, Elizabeth Anne Downey, Kitch, Saurbier, Drutchas, Wagner & Kenney, Detroit, MI, for plaintiffs.

Frederick J. Dindoffer, Barnett Jay Colvin, Bodman, Longley & Dahling, Detroit, MI, Gale Reddie Lea, Jackson & Kelly, Charleston, WV, for defendants.

## OPINION

QUIST, District Judge.

This case involves a dispute over coverage of insurance policies issued by plaintiffs St. Paul Surplus Lines Insurance Company and St. Paul Fire and Marine Insurance Company (collectively, St. Paul) to defendants Cannelton Industries, Inc. (Cannelton) and Algoma Steel Corporation, Limited (Algoma) on property located in Sault Ste. Marie, Michigan. St. Paul filed a declaratory judgment action in this Court. Cannelton moved for dismissal for lack of personal jurisdiction.

### Background Information

The St. Paul insurers both have their principal place of business in St. Paul, Minnesota. St. Paul Surplus is a Delaware corporation and St. Paul Fire is a Minnesota corporation. Cannelton is a West Virginia corporation with its principal place of business in Charleston, West Virginia.

Cannelton is in the business of mining, processing and marketing coal. Its mines and related facilities are located in West Virginia and it is authorized to do business solely in West Virginia. It is the owner, however, of property in Sault Ste. Marie, Michigan. It owns approximately 75 acres of land along the St. Mary's River comprised of the former site of Northwestern Leather Tannery (Northwestern). Until the mid-1950's, Northwestern operated a tannery on the site and used part of the property as disposal areas for tannery and other wastes. Cannelton Coal Company acquired the property in 1964 and became Cannelton Industries, Inc. in 1971. Cannelton has not used or developed the site for any business operations. Its activities relating to the site have included paying taxes, taking action to prevent dumping on the site, erecting fencing, and entering into an Administrative Order by Consent with the United States Environmental Protection Agency ("EPA") for site cleanup.

There is no dispute that the property from which the instant coverage dispute arose is

located in Michigan. No one asserts that the insurance contracts were negotiated or executed in Michigan.

At issue in the coverage dispute is whether St. Paul is liable for the costs of clean-up of toxic materials on the Sault Ste. Marie site. The materials were deposited on the site prior to the time Cannelton owned the property. The Michigan Department of Natural Resources ("MDNR") tested soil samples from the site in the late 1970's and found high levels of cyanide, chromium, lead, manganese, arsenic, cadmium, and copper. After a series of fires at the site in the 1980's, the EPA added the site to the National Priorities List pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act. ("CERCLA"), 42 U.S.C. § 9601 *et seq.* In 1988 the EPA notified Cannelton that it was a Potentially Responsible Party with respect to environmental contamination on the site and asked it to present a proposal for implementing a Remedial Investigation/Feasibility Study. The EPA issued an Administrative Order by Consent in August 1991, pursuant to § 106 of CERCLA, which Cannelton executed on August 26, 1991. Eleven months later, on July 9, 1992, the EPA released its proposed plan for site clean-up and remediation.

On July 1, 1992, Cannelton instituted a declaratory judgment action against fifty-seven of its insurance carriers, including St. Paul, in state court in West Virginia. St. Paul has filed a motion in the West Virginia action, seeking to dismiss on grounds of *forum non conveniens.* According to Cannelton, St. Paul and the fifty-five other carriers want Cannelton's West Virginia action dismissed in favor of proceedings in this Court.[1]

### Issue Presented

Defendant Cannelton argues that this Court lacks personal jurisdiction over this dispute because Cannelton does not have "minimum contacts" with the State of Michigan. It characterizes the instant action as a

contract dispute between Delaware, Minnesota, and West Virginia corporations and claims that it has done nothing in the State of Michigan to cause it to anticipate being haled into court there on insurance coverage issues. Cannelton argues that this Court does not have general jurisdiction over this dispute because, at the time the suit was filed, Cannelton was not "carrying on ... a continuous and systematic part of its general business within the state." M.C.L.A. 600.-711. In addition, it argues that it is not subject to limited jurisdiction in Michigan, pursuant to M.C.L.A. 600.715, because the dispute over insurance coverage did not arise out of any business it was transacting in the state or its ownership, use, or possession of the real property it owns in Michigan.

St. Paul argues that Cannelton's contacts with the state, as a property owner and in connection with business conducted by Cannelton and a subsidiary of Cannelton, are sufficient to make it generally subject to jurisdiction in this Court. It also argues that the requirements for limited jurisdiction are met because Cannelton owns property and does business in the state and the instant dispute over insurance coverage is related to the property Cannelton owns in Sault Ste. Marie and the business Cannelton conducts in relation to that property.

## DISCUSSION

### *Burden of Proof*

■ The plaintiff bears the burden of establishing jurisdiction. *Third National Bank of Nashville v. WEDGE Group, Inc.,* 882 F.2d 1087, 1089 (6th Cir.1989). In this instance, an evidentiary hearing is not necessary to determine the issue, since the written submissions do not raise issues of credibility or disputed issues of fact. The Sixth Circuit has instructed that "if the district court determines to decide the issue solely on the basis of written materials, the plaintiff should

---

1. Commercial Union Insurance Company (Commercial Union), another of the insurers sued by Cannelton in West Virginia, also brought a declaratory judgment action in the District Court for the Western District of Michigan, 2:92–cv–111, seeking a ruling that it was not liable to

Cannelton for costs associated with its Sault Ste. Marie property. In that action, which was filed on May 15, 1992, Cannelton also moved to dismiss for lack of personal jurisdiction. This motion is addressed in an Order issued by this Court concurrent with this Order.

be required only to make a *prima facie* case of jurisdiction, that is, he need only demonstrate facts which support a finding of jurisdiction in order to avoid the motion to dismiss." *American Greetings Corp. v. Cohn,* 839 F.2d 1164, 1168–69 (6th Cir.1988) (quoting *Welsh v. Gibbs,* 631 F.2d 436, 438–39 (6th Cir.1980), *cert. denied,* 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981)) (internal quotations and citations omitted). In such a case, "the burden of the plaintiff is relatively slight and the district court must consider the pleadings in the light most favorable to the plaintiff." *American Greetings,* 839 F.2d at 1169.

### Applicable Law

■ In a diversity action, the issue of whether a federal court has personal jurisdiction over a defendant is determined by applying the law of the state in which the court sits. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In addition, the court must consider whether constitutional due process permits personal jurisdiction. *Theunissen v. Matthews,* 935 F.2d 1454, 1459 (6th Cir.1991).

Michigan's long-arm statute on personal jurisdiction over corporations provides both general and limited or "specific" jurisdiction on the basis of the relationship of a corporation to the forum. The general jurisdiction section, M.C.L.A. 600.711, provides:

Sec. 711. The existence of any of the following relationships between a corporation and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise general personal jurisdiction over the corporation and to enable such courts to render personal judgments against the corporation.

(1) Incorporation under the laws of this state.

(2) Consent, to the extent authorized by the consent and subject to the limitations provided in section 745.

(3) The carrying on of a continuous and systematic part of its general business within the state.

The limited jurisdiction section, M.C.L.A. 600.715, provides:

Sec. 715. The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such court to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:

(1) The transaction of any business within the state.

(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of any real or tangible personal property located within the state.

(4) Contracting to insure any person, property, or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

### APPLICATION

#### General Jurisdiction

■ In considering the requirement for general jurisdiction pursuant to M.C.L.A. 600.711, there is no dispute that the first two bases for jurisdiction do not apply. Cannelton is incorporated under the laws of the State of West Virginia and has not consented to jurisdiction in Michigan. It is only the third basis under Section 600.711 that St. Paul claims is applicable. St. Paul's evidence of the business Cannelton has been conducting in Michigan fails, however, to establish a *prima facie* case for personal jurisdiction. Although there is evidence that Cannelton and its subsidiaries may have carried on a systematic part of its general business in Michigan for some time in the 1970's, when defendant operated a tube finishing plant in Dafter, Michigan, or in the 1980's, when defendant had a bank account with the Bank of Detroit, these business activities have been discontinued. St. Paul has not established

that Cannelton is conducting any continuous, systematic part of its general business in Michigan at this time. All that St. Paul has shown is business incidental to ownership of the property at issue. This limited activity does not support general jurisdiction.

### Limited Jurisdiction

Both St. Paul and Cannelton agree that, of the five relationships that may give rise to limited personal jurisdiction pursuant to M.C.L.A. 600.715, only two are relevant to the instant case—(1) "the transaction of any business within the state" and (3) "the ownership, use, or possession" of real property "located within the state." Cannelton acknowledges that it owns the insured site, but it insists that it cannot be said to be doing business during the period when the action commenced. St. Paul has, however, substantiated the fact that Cannelton had transacted a variety of business in Michigan in connection with its property. Cannelton's activities include maintaining the property, paying taxes, corresponding with the state environmental agency, and acting to prevent further dumping and to clean up its property. Thus, St. Paul argues, the relationships under both Section 715(1) and (3) are established.

### Constitutional Considerations

The Supreme Court stated the basic constitutional requirement for personal jurisdiction in *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945):

> [D]ue process requires only that in order to subject a defendant to judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'

One way to measure fairness is to considered whether defendant's conduct is such that he or she "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 294–96, 100 S.Ct. 559, 566–67, 62 L.Ed.2d 490 (1980).

■ The Supreme Court explained in *Burger King Corp. v. Rudzewicz,* that where a forum is seeking to assert limited jurisdiction, the due process requirement that a party have "fair warning" that it may be subject to jurisdiction is satisfied if the defendant has "purposefully directed" his activities at the forum and "the litigation results in alleged injuries that 'arise out of or relate to' those activities." 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985). The Sixth Circuit has delineated three criteria to consider in determining whether due process permits personal jurisdiction over a non-resident who is not generally engaged in activities within the forum state:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.
>
> Second, the cause of action must arise from the defendant's activities there.
>
> Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum jurisdiction to make the exercise of jurisdiction over the defendant reasonable.

*Theunissen,* 935 F.2d at 1460.

Cannelton maintains that, even if the requisite relationship can be said to exist between it and the forum, there is no basis for personal jurisdiction because the insurance contract, not the property itself, gave rise to this action and the insurance contract has nothing to do with Michigan. Thus, it contends, neither its property ownership nor any business it transacted in Michigan can be said to give rise to this action. It argues that it would be unfair and unreasonable for this Court to exercise personal jurisdiction over Cannelton for purposes of this dispute.

■ When the three criteria for assessing the constitutionality of limited personal jurisdiction are applied to this case, however, this Court believes that each of the constitutional requirements for personal jurisdiction are met.

**(1) Purposely Avail of Privilege of Acting in the Forum.**

In *Burger King*, the Supreme Court distinguished between defendants who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" and defendants whose only connection with a state are the result of "random, fortuitous, or attenuated contacts" such as those caused by a plaintiff contacting a defendant from the state or bringing the defendant's goods into the state. 471 U.S. at 474–75, 105 S.Ct. at 2183 (citations omitted). The Court held that "[j]urisdiction is proper ... where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id.* at 475, 105 S.Ct. at 2184 (emphasis in original, citation omitted). By owning property in Michigan, Cannelton originated and maintained contact with this forum. This property ownership is thus, in itself, sufficient to satisfy the "purposeful availment" requirement. In addition, Cannelton has engaged in business transactions directed at maintaining the property for its benefit. These transactions may have been compelled by the laws of Michigan and the United States, as Cannelton argues, but they were not merely chance encounters with the state. Nor were they compelled by any action of plaintiffs. Instead they arose from Cannelton's ownership of the property and the responsibilities that attend property ownership.

**(2) Action "Arising From" Activity in the Forum.**

In *Lanier v. American Board of Endodontics*, 843 F.2d 901, 909 (6th Cir.), *cert. denied*, 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988), the Sixth Circuit examined what is required to find that an action "arise from" defendant's contacts with the forum, and concluded that the "arising out of" requirement is satisfied if the cause of action was "made possible by" or "lies in the wake of" the defendant's state contacts. "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that [contact]." *South-*

*ern Mach., Co. v. Mohasco Ind., Inc.*, 401 F.2d 374, 384 n. 29.

In the instant case, there is a direct and substantial relationship between Cannelton's contact with the forum through its ownership of Michigan property and the insurance policies that are the subject of the instant dispute. The insurance policies insure Cannelton's Michigan property and the dispute concerns whether there is insurance coverage for toxic waste clean-up on the Michigan property. Cannelton argues that the connection is not substantial because the dispute concerns the terms of a contract negotiated and executed outside of Michigan. It may be that, if the dispute were limited to issues that made no reference to the insured property, such as payment provisions or renewal terms, jurisdiction in this forum would not be proper. In the instant case, however, the dispute concerns the condition of the insured property and coverage for risks arising out of the subject Michigan property. The operative facts of the controversy are thus substantially related to Cannelton's contact with the state through its ownership of the property and its activities related to clean-up.

**(3) Connection Substantial Enough to Make Exercise of Jurisdiction Reasonable.**

The Sixth Circuit has determined "that an inference of reasonableness arises where the first two criteria are met and that 'only the unusual case will not meet this third criterion.'" *Theunissen*, 935 F.2d at 1461 (quoting *American Greetings*, 839 F.2d at 1170). When a defendant objecting to jurisdiction has purposely availed himself of the privilege of acting in the forum, "he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2185. To determine whether it is reasonable to exercise personal jurisdiction, the court must "consider the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief" and "weigh ... 'the interests of the interstate judicial systems interest in obtaining the most efficient resolution of controversies.'" *Asahi Metal Ind. v. Superior Court*, 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987).

Cannelton has presented no consideration that would make this Court's exercise of personal jurisdiction unreasonable. The relevant factors instead support this Court's exercise of jurisdiction. In light of the activities in which Cannelton is already engaged in this state in connection with its Michigan property, its defense of this action in this forum is not unduly burdensome. Moreover, Michigan has an interest in the issue of insurance coverage over contaminated property within its borders both because of its interest in the clean-up of that property and its interest in consistent treatment of insurers of Michigan property.[2]

The interests of plaintiffs in obtaining relief with respect to defendant Algoma as well as defendant Cannelton converges with the interest of the interstate judicial system in obtaining efficient resolution of disputes, in that Algoma is within the jurisdiction of this Court but apparently not within the jurisdiction of the state court of West Virginia.

## CONCLUSION

For the reasons stated above, this Court has personal jurisdiction over Cannelton pursuant to M.C.L.A. 600.715 for the resolution of this dispute over insurance coverage. An Order consistent with this Opinion will be issued.

## ORDER

In accordance with the Opinion issued on this date,

IT IS HEREBY ORDERED that defendant's motion to dismiss (docket # 6) is DENIED.

COMMERCIAL UNION INSURANCE CO., Plaintiff,

---

2. Michigan's interest in adjudicating insurance coverage disputes is expressed in M.C.L.A. 600.-715(4), which established jurisdiction over cases arising from the act of contracting "to insure any person, property, or risk located within the state at the time of contracting."