**DOMTAR, INC., Respondent,**

v.

**NIAGARA FIRE INSURANCE CO., et al., Defendants,**

**Canadian General Insurance Co., Appellant.**

**No. CX–93–2449.**

Court of Appeals of Minnesota.

June 21, 1994.

Review Granted Aug. 29, 1994.

Larry A. Hanson, Leonard W. Glewwe, Moore, Costello & Hart, St. Paul, for appellant.

Douglas L. Skor, Kathleen Erickson Di-Giorno, Briggs and Morgan, St. Paul, and Paul Anton Zevnik, John Osborne, Zevnik, Horton, Guibord & McGovern, Washington, DC, for respondent.

Considered and decided by SCHUMACHER, P.J., and LANSING and RANDALL, JJ.

## OPINION

SCHUMACHER, Judge.

Canadian General Insurance Company appeals from the district court's denial of Canadian General's motion to dismiss for lack of personal jurisdiction. We affirm.

## FACTS

Respondent Domtar, Inc. is a Canadian corporation with its principal place of business in Montreal, Quebec. Canadian General is also a Canadian corporation; its principal offices are in Scarborough, Ontario.

In 1924, Dominion Tar & Chemical Company Ltd., a predecessor to Domtar, opened and began operating a tar plant in Duluth, Minnesota. The plant was in operation from 1924 until 1948, when it was shut down permanently. Domtar sold the property on which the plant was located in 1955.

The Domtar plant was located in an industrial area on the north bank of the St. Louis River in West Duluth, approximately four river miles from Lake Superior. The plant was on a peninsula, with the Stryker Embayment to the west. Pollutants have been

found in the river. The peninsula, an adjoining boat slip and the Stryker Embayment are part of a 230–acre superfund site that was placed on the Environmental Protection Agency's national priorities list in 1983 and on the Minnesota Pollution Control Agency's (PCA) permanent list of priorities in 1984.

On March 26, 1991, the PCA issued a request for response action to, among others, Domtar. The request for response action identified Domtar as a potentially responsible party and requested that Domtar conduct investigations and submit reports to the PCA.

Domtar tendered the PCA's claim to its insurers, who refused the tender. Domtar commenced a declaratory judgment action in Ramsey County, Minnesota against its insurers, asserting the insurers were obligated to investigate the PCA's claims, and to defend and indemnify Domtar in the PCA proceedings. Canadian General moved to dismiss, asserting that the Minnesota court lacked personal jurisdiction over Canadian General.

Canadian General is not licensed to do business in Minnesota and has never sold insurance in its own name in this state.[1] Canadian General maintains no offices outside of Canada and is not licensed to do business in any state of the United States. In addition, Canadian General rarely insures U.S. operations and charges a higher premium for coverage of U.S. sales than Canadian sales.

According to Domtar, Canadian General issued primary liability insurance to Domtar from 1956 through 1965. The only Canadian General policy found so far covered Domtar between January 1, 1960 and January 1, 1963, and was a renewal of a previous policy. The property damage endorsement to the 1960–63 policy provided that Canadian General would

> PAY on behalf of the Insured all sums which the Insured shall become obligated to pay * * * for damages because of damage to or destruction of property caused by

accident occurring within the Policy Period and while this Endorsement is in force.

At the time the policy was issued, the customary practice was to issue policies for three-year terms. Although Canadian General did not retain the underwriting file from 1960, it surmised that the file should have contained information on Domtar's operations, including estimated sales broken down by various types of operations, prior claims history and inspection reports of Domtar's main operations and main locations.

When Canadian General moved for dismissal, the district court ordered further discovery on the jurisdiction issue. Following discovery, the district court determined that it could exercise personal jurisdiction over Canadian General. Canadian General appeals.

### ISSUE

Did the district court err in concluding it could exercise personal jurisdiction over the Canadian insurer of a Canadian corporation for property damage in Minnesota which occurred during the policy period and was allegedly caused by the insured's activities in Minnesota?

### ANALYSIS

*Standard of Review*

An order denying a motion to dismiss for lack of personal jurisdiction is appealable as a matter of right. *Stanek v. A.P.I., Inc.*, 474 N.W.2d 829, 831 (Minn.App. 1991), *pet. for rev. denied* (Minn. Oct. 31, 1991), *and cert. denied,* —— U.S. ——, 112 S.Ct. 1603, 118 L.Ed.2d 316 (1992). Whether personal jurisdiction exists presents a question of law that this court reviews de novo on appeal. *Id.* at 832.

1. *The Long Arm Statutes*

Whether personal jurisdiction over a nonresident exists depends on two criteria: (1) whether the requirements of Minn.Stat. § 543.19 (1992), the long arm statute, have been satisfied; and (2) whether there are

---

1. Canadian General has, however, conducted business in Minnesota through another insurer. *See County of Hennepin v. Ada–Bec Sys.*, 394 N.W.2d 611 (Minn.App.1986), *pet. for rev. denied* (Minn. Dec. 17, 1986).

sufficient "minimum contacts" to satisfy constitutional due process requirements. *Stanek*, 474 N.W.2d at 832. Whether the requirements of the long arm statute have been met presents a question of state law; whether there are sufficient minimum contacts to satisfy due process is a question of federal law. *Id.*

The legislature intended the long arm statute to have the maximum extraterritorial effect allowed under the United States Constitution. *Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 410 (Minn.1992). Because the legislature intends the long arm statute to be coextensive with the limits of due process, the only issue presented in this appeal is whether the exercise of personal jurisdiction over Domtar is consistent with the requirements of the federal Constitution. *Id.* at 411. Any doubt regarding the sufficiency of contacts to allow the exercise of personal jurisdiction should be resolved in favor of jurisdiction. *Id.* at 412.

### 2. *Due Process*

The minimum-contacts test for long arm jurisdiction was first recognized in *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *See* Note, *Minimum Contacts in Contract Cases: A Forward Looking Reevaluation*, 58 Notre Dame L.Rev. 635 n. 1 (1983). Under *International Shoe*, a nonresident defendant may be subject to the personal jurisdiction of a state's courts if the defendant has sufficient minimum contacts with the foreign state so that the exercise of jurisdiction over the nonresident does not offend " 'traditional notions of fair play and substantial justice.' " *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)); *see also Rush v. Savchuk*, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Kulko v. Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). In making this determination, the focus 'is on "the relationship among the defendant, the forum, and the litigation." *Shaffer*, 433 U.S. at 204, 97 S.Ct. at 2580.

The decision in *International Shoe* recognized that modern travel and communication technologies have greatly reduced the burden on a defendant imposed by litigating outside of its home state. *McGee v. International Life Ins.*, 355 U.S. 220, 222–23, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). With respect to insurance, the Court weighs heavily the consequences of the insurer's contractual obligations in the state where the insurer's obligations are to be carried out. *Travelers Health Ass'n v. Commonwealth of Virginia*, 339 U.S. 643, 648, 70 S.Ct. 927, 930, 94 L.Ed. 1154 (1950).

Personal jurisdiction over a foreign corporation is consistent with due process requirements when the corporation has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958) (citing *International Shoe*, 326 U.S. at 319, 66 S.Ct. at 154). If a corporation has purposefully availed itself of the benefits and protections of the forum state's laws, the corporation has "clear notice that it is subject to suit" in the forum state. *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567. It can then protect itself from the burden of litigation by procuring insurance. *Id.*

The purposeful availment must consist of actions taken by the defendant that "create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985) (quoting *McGee*, 355 U.S. at 223, 78 S.Ct. at 201). A customer's unilateral act of bringing the corporation's product into the forum state is insufficient to create personal jurisdiction. *World–Wide Volkswagen*, 444 U.S. at 295–96, 100 S.Ct. at 566.

■ Courts must exercise greater caution in exercising personal jurisdiction across international boundaries than across interstate boundaries. *Asahi Metal Indus. v. Superior Court, Solano County*, 480 U.S. 102, 114, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987).

When a court exercises personal jurisdiction across state lines, two interests are implicated: the right of the defendant not to be burdened by unfair litigation in a distant forum and the proper role of one state's courts in a federal system. *World–Wide Volkswagen*, 444 U.S. at 291–92, 100 S.Ct. at 564. When national borders are crossed, a court must give "significant weight" to the "unique burdens" of a defendant that is forced to defend itself in a foreign legal system. *Asahi*, 480 U.S. at 114, 107 S.Ct. at 1033. In addition, a state's exercise of personal jurisdiction in the international level may involve considerations of the United States' foreign relations policies. *Id.* at 115, 107 S.Ct. at 1034. Canadian General has not indicated any unique burdens imposed on it by having to enter a foreign legal system, nor has Canadian General shown any potential foreign policy concerns that might be affected by Minnesota's exercise of personal jurisdiction.[2]

■ In this case, Domtar was doing business in Minnesota. It obtained insurance to cover its potential liability created by its Minnesota operations, as the Court recognized corporations could do in *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567. Canadian General issued an insurance policy that afforded Domtar protection against liability for property damage caused by Domtar's operations, including its Minnesota operations. Canadian General's underwriting process should have alerted Canadian General to the possibility that its insured could be sued in a state where the insured had operated a manufacturing facility for 30 years.

In this case, Domtar had ceased operation in Minnesota at least two years before the first Canadian General policy was issued. Nevertheless, the possibility that a manufacturer could be liable for groundwater contamination and responsible for cleaning up the pollution has been recognized in Minne-

sota since the late 1800's. *Minnesota Mining & Mfg. v. Travelers Indemn. Co.*, 457 N.W.2d 175, 183 (Minn.1990). Domtar had operated in Minnesota for over 30 years. It obtained insurance to cover its potential liability created by its Minnesota operations, as the court recognized corporations could do in *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567. According to one of Canadian General's officers, the underwriting file should have contained information on Domtar's operations and locations. Thus, Canadian General should have been aware that it was insuring Domtar for potential liability for groundwater contamination in Minnesota at the time it entered into the insurance policies. *See Minnesota Mining & Mfg.*, 457 N.W.2d at 183 (at time entered into insurance policies, parties aware of potential liability for groundwater contamination).

Moreover, the property damage has been ongoing. Damage to property occurring during Canadian General's policy period would trigger the Canadian General coverage. *Industrial Steel Container Co. v. Fireman's Fund Ins. Co.*, 399 N.W.2d 156, 159 (Minn. App.1987), *pet. for rev. denied* (Minn. Mar. 18, 1987).

Canadian General should have expected coverage disputes to be resolved in the same forum as the underlying action. A claim has been brought against Domtar alleging Domtar's operations in Minnesota have caused property damage in Minnesota. Responding to Domtar's declaratory judgment action in Minnesota is a responsibility that attends issuance of the policy. *See St. Paul Surplus Lines Ins. Co. v. Cannelton Indus.*, 828 F.Supp. 498, 502–03 (W.D.Mich.1993). This case does not involve a unilateral act by Domtar in bringing Canadian General's product into Minnesota; Canadian General and Domtar entered into a contract of insurance for Domtar's liability. The present case is an action on that contract brought in the place of performance.

---

2. Clearly, both Canada and the United States have an interest in assuring the clean-up of pollution that could affect both countries. The Domtar site is on a river four miles from Lake Superior, the largest lake in North America, a lake on which the states of Minnesota, Wisconsin and Michigan, and the province of Ontario, border.

The broad issue Domtar's declaratory judgment action raises is how the clean-up is to be financed. Canadian General has not shown that the present declaratory judgment action contravenes a clearly established policy of the Canadian government fixing responsibility for payment of clean-up costs.

The declaratory judgment action brought by Domtar against Canadian General arises out of the issuance of an insurance policy, as well as the administrative proceedings that have been commenced against Canadian General's insured in Minnesota. This provides a sufficient basis for exercising personal jurisdiction over Canadian General. *See AIU Ins. Co. v. Superior Court,* 177 Cal.App.3d 281, 222 Cal.Rptr. 880 (1986), *pet. for rev. denied* (Cal. May 21, 1986), *cert. denied,* 479 U.S. 821, 107 S.Ct. 86, 93 L.Ed.2d 39 (1986). In *AIU,* a Bermuda-based insurance company was sued in California by Shell Oil Company. The states of California and Colorado, the United States Environmental Protection Agency and the United States Army had sued Shell Oil Company for damages and cleanup costs associated with the Rocky Mountain Arsenal in Colorado and a toxic waste site near Fullerton, California. *AIU,* 222 Cal.Rptr. at 881. The court held that the cause of action against the insurer arose out of the insurer's forum-related activity of insuring Shell's assets and activities in California. *Id.* at 885. In the present case, as in *AIU,* the cause of action against Canadian General arises out of Canadian General's insuring of Domtar's assets and activities in Minnesota. We hold that this is sufficient to allow a Minnesota court to exercise personal jurisdiction over Canadian General. *See AIU,* 222 Cal.Rptr. at 886.

Domtar argues that Canadian General agreed to be subject to suit anywhere in the United States and Canada because the Canadian General policy defined the coverage territory as the United States and Canada. Domtar urges this court to apply what has come to be known as the territory-of-coverage rule, under which any forum within the geographic territory covered by an insurance policy can exercise jurisdiction over the insurer. *See* William C. Hoffmann, *Personal Jurisdiction Over Alien Insurance Companies: The Territory–of–Coverage Rule,* 26 Tort & Ins. L.J. 703 (1991).

In this case, there is no need to resort to the territory-of-coverage rule. Although Canadian General issued a policy covering Domtar's liability in the United States and Canada, what is significant is that Canadian Gen-

eral should have been aware of Domtar's previous contacts with Minnesota and agreed to insure Domtar for its potential liability. This is not a case in which Domtar's products have gone from Minnesota to another state and caused injury or property damage there. The insured's operations in Minnesota have caused damage in Minnesota. This is not the "fortuitous presence" of a Canadian General insured; Domtar's factory was in Minnesota for 30 years. *Cf. Sparkowich v. American S.S. Owner's Mut. Protection & Indem. Ass'n,* 687 F.Supp. 695 (D.Me.1988).

Canadian General agreed to insure Domtar for liability arising out of its operations, including its operations in Minnesota. Canadian General's conduct and connection with Minnesota are such that it should reasonably anticipate being haled into court here. *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567.

### DECISION

Canadian General is subject to the jurisdiction of the Minnesota courts in this declaratory judgment action.

**Affirmed.**

LANSING, Judge (dissenting).

I respectfully dissent. The evidence is undisputed that two years before Canadian General first decided to insure Domtar, a Canadian company, Domtar had sold its Minnesota plant and no longer conducted operations in Minnesota. Because Canadian General directed no contacts toward Minnesota, the exercise of jurisdiction violates longstanding jurisdictional principles and disregards the enhanced jurisdictional burden that applies when the defendant is a foreign national.

The United States Supreme Court distinguishes between general and specific jurisdiction. General jurisdiction is measured by the existence or extent of "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984); *see also Valspar Corp. v. Lukken Color Corp.,* 495 N.W.2d 408, 411 (Minn.1992) (general jurisdiction exists when "a defen-

dant conducts so much business within a state that it becomes subject to the jurisdiction of that state's courts for any purpose"). Specific jurisdiction may be based on only a few contacts with the forum state, but the case must arise out of or relate to one of those specific contacts. _Helicopteros,_ 466 U.S. at 416, 104 S.Ct. at 1872; _Valspar,_ 495 N.W.2d at 411.

As the majority implicitly recognizes, general jurisdiction is not available over Canadian General. Although Canadian General had some contacts with Minnesota in the 1970s and 1980s, when it provided bonds to another Canadian company for a Minnesota medical center, these contacts are not the type of "continuous and systematic" contacts that would support an exercise of jurisdiction. _See Helicopteros,_ 466 U.S. at 416, 104 S.Ct. at 1872; _see also Valspar,_ 495 N.W.2d at 411.

Neither is specific jurisdiction available. This is a declaratory judgment action brought by Domtar against Canadian General in Minnesota. Domtar has not provided any concrete evidence of Canadian General directing contacts toward Minnesota by insuring Domtar. _See Hardrives, Inc. v. City of LaCrosse,_ 307 Minn. 290, 293, 240 N.W.2d 814, 816 (1976) (when a defendant challenges jurisdiction, the plaintiff has the burden of proving a _prima facie_ case supporting jurisdiction). Although a defendant need not be present within a state to be subject to jurisdiction, the defendant must have "purposely directed" efforts toward residents of the forum state. _Burger King Corp. v. Rudzewicz,_ 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985).

According to the parties, Domtar's Duluth plant was sold in 1955. Domtar alleges in its complaint that Canadian General first insured it in October 1956. The evidence varies slightly from the allegation and shows that Canadian General likely first insured Domtar in 1957. Domtar submitted evidence demonstrating that its contacts with the Duluth site extended to April 1956. Whichever evidence is accurate, there is _no_ evidence that Domtar had any connection with Minnesota at the time Canadian General first insured it.

Canadian General submits evidence stating that it never insured Domtar's Minnesota operations and this evidence is consistent with the information Domtar provides. Although Canadian General may have considered Domtar's past presence in Minnesota when deciding whether to insure Domtar, no underwriting records exist to show that such consideration took place. Even if these records did exist, however, it is unlikely that Canadian General would have foreseen that it would be haled into a Minnesota court based on its act in insuring a Canadian company, which at the time the insurance policy was first issued, did not own property in Minnesota or have any contacts with Minnesota. _Cf. McGee v. International Life Ins.,_ 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957) (finding jurisdiction over insurance company when contract was delivered in forum state, premiums were mailed from forum state, and insured was a resident of forum state at time of death).

Domtar, in this action, is seeking coverage from sixteen insurers. Although pragmatic considerations favor allowing Domtar to resolve all coverage questions in one action, these pragmatic concerns cannot override longstanding jurisdictional principles, particularly when the principles are applied to a foreign national. _See Asahi Metal Indus. v. Superior Court of Cal.,_ 480 U.S. 102, 115, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92 (1987) (courts must exercise great care and reserve when extending notions of personal jurisdiction into the international field). Canadian General has not purposefully availed itself of the "privilege of conducting activities within the forum state, thus invoking the benefits and protection of its law." _See Hanson v. Denckla,_ 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

Minnesota has a strong interest in holding parties responsible for environmental harm. But Minnesota clearly has jurisdiction over Domtar, the party that is liable for response costs. Domtar's suit against Canadian General is basically for indemnification, and although Minnesota has an interest in Canadian General's indemnification of Domtar, this interest cannot create jurisdiction. _See Asahi,_ 480 U.S. at 114–15, 107 S.Ct. at 1033

(recognizing that California had only minimal interests in an indemnification suit between two foreign nationals). Domtar is free to proceed against Canadian General in Canadian courts.

A defendant must have minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Canadian General's contacts with Minnesota are insufficient to establish either general or specific jurisdiction, and I would reverse.